(Decided June 11th, 1866.)

---

GEORGE R. RITTENHOUSE *vs.* THE MAYOR & CITY COUNCIL OF BALTIMORE.

THE RIGHTS, POWERS, AND LIABILITIES OF MUNICIPAL CORPORATIONS, in respect to contracts made by them, must be considered with reference to the subject matter to which such contracts relate, and the character in which the municipal body acts in making them.

Where the Corporation appears in the character of a mere property holder, and enters into a contract with reference to such property, as any private citizen or other proprietor might do; or where it engages in an enterprise not necessarily connected with, or growing out of, its public capacity as a part of the local government, then all its rights and liabilities are to be measured and determined by the same rules that govern individuals or private corporations, and it cannot claim exemption or immunity from the legal liabilities growing out of the contracts by reason of its public municipal character.

But in respect to contracts made by them in the exercise of powers entrusted to them in their municipal character, exclusively for public purposes, Courts have no power to review or control their acts, unless they transcend the limits of their delegated powers.

An ordinance of the Mayor & C. C. of Balto., approved April 28th, 1860, provided for the purchase of a site and the erection of a new alms-house. In virtue of the ordinance, contracts were made for the erection of the

Rittenhouse *vs.* Mayor & C. C. of Balto.

buildings, and among others the contract with R. to execute "all the brick-mason's work, including all the bricks, lime, sand and labor in the three buildings forming the west front of the alms-house buildings," as described in a contract dated the 9th of November, 1860. About one year afterwards, and after the commencement of the buildings and some work done by the contractors, including R., the site was discovered to be unhealthy, and the ordinance was repealed by an ordinance approved April the 5th, 1861, which directed the committee on the alms-house to settle with the contractors, as far as it could be done, upon fair and equitable terms. The committee failed to agree on a settlement with R., who sued the Mayor & City Council for a breach of contract.—HELD:

1st. That the subject matter of the ordinance of 1860, under which the contract sued on was made, was one over which the appellee possessed jurisdiction and power to legislate, and that consequently the repealing ordinance of 1861 was valid, as passed in the exercise of the powers belonging to the corporation in its public, political or municipal character.

2nd. That the contract must be taken and construed as being made subject to the power of the corporation to repeal the ordinance of 1860, and to abandon or discontinue the work if, in their judgment, the public good so required, and the corporation having repealed that ordinance and abandoned the work, R. was not entitled to damages on account of profits he might have realized if he had been permitted to go on with the work.

3rd. That the evidence offered for the purpose of supporting the claim for such prospective profits was, therefore, properly rejected.

4th. That the evidence offered with regard to damages claimed as indemnity against any loss to which R. may become liable by reason of his subsidiary contracts being vague and indefinite, and there being no proof offered of any damage actually incurred by reason thereof, such offered evidence was properly rejected.

5th. That any damage which R. had actually sustained by reason of the contract while the same was operative and in force, was properly recoverable in this action.

There was proof offered that R. had been for fifteen years engaged in the manufacture of bricks near the city of Baltimore, and that at the date of the contract, he had on hand 600,000 bricks of his own manufacture, which were of ready sale in the market, but which he retained in hand in consequence of the contract, and to enable him to supply bricks necessary for the work; that after the repealing ordinance had been passed, and he received notice thereof, he sold the bricks at prices averaging about one dollar and fifty cents per thousand less than he could have realized by a sale of them in November, 1860. — HELD:

Rittenhouse *vs.* Mayor & C. C. of Balto.

1st. That the loss and damage thus incurred, if found by the jury, would be properly recoverable in this action.

2nd. That an instruction given, that R. was limited to the recovery of "any damage which he had actually sustained by reason of the contract, and *before the enactment of the repealing ordinance,*" being calculated to mislead the jury as to this item of damages, and the verdict and judgment having been against him, on an appeal by R. the judgment will be reversed and *procedendo* awarded.

APPEAL from the Superior Court of Baltimore city:

This was an action brought by the appellant against the appellee to recover damages "for a breach and violation by the defendant of its contract and agreement with the plaintiff," whereby the latter agreed "to execute and perform all the brick-mason's work, including all the bricks, lime, sand and labor for and on the buildings forming the west front of the alms-house buildings, as described in said contract," and whereby the defendant agreed to pay the plaintiff for such services and materials the sum of $57,350.84. The defendant pleaded *performance,* and on said plea issue was joined. The plaintiff afterwards filed a bill of particulars, for which see the opinion of this Court.

*Exception.*—At the trial of the cause the plaintiff, to sustain the issue joined on his part, read in evidence to the jury the ordinance of the Mayor and City Council of Baltimore entitled, an ordinance providing for the purchase of a site and the erection of an alms-house and the necessary outbuildings, &c., approved April the 28th, 1860; and also read in evidence the contract or articles of agreement between himself and the defendant.

He further proved that in the month of November, in the year 1860, he entered into a contract with the said defendant through its proper agent to execute and perform all the brick-mason's work, including the supply of all the bricks, lime, sand and *lime* for the same, for and on the three buildings, forming the west front of the said alms-house building.

according to the plans, elevations, sections and working drawings and specifications provided for the purpose—for all which work and materials the said defendant contracted to pay him the sum of $57,350.84; and, also, read in evidence, the bond which he had given to the defendant for the performance of the contract on his part. He then read in evidence to the jury his proposals to the defendant, from which it appears that the contract aforesaid was at the rate of $10.93 per thousand of bricks, to be supplied by him as aforesaid, the quantity of brick being 53,000, also the plans, specifications, &c., which it is agreed are to be inserted in this bill of exceptions, or appended to it if it shall be so required by either party.

The plaintiff being then sworn as a witness for himself, proved that in consequence of his aforesaid contract with the said defendant and to enable him the more conveniently to execute his part thereof, and shortly after making said contract he entered into an agreement with one Daniel White, the owner of a lot of ground in the vicinity of the site of the alms-house, for the privilege of digging the clay on said lot for manufacturing thereof the bricks intended by him for said alms-house, and for making and burning the said bricks on the said lot, and for taking wood from said lot for burning the said bricks, and did actually dig a quantity of clay on said lot, and made a small quantity of bricks thereof at the plaintiff's yard on West Baltimore street; this was done to determine the quality of said clay, and of the bricks made therefrom, and that the bricks so made were of a good merchantable quality, and fully equal in quality to the specifications aforesaid; that he was to pay to the said White, for the privileges aforesaid, the sum of fifty cents for every thousand bricks he should make as aforesaid, and also an additional sum for the wood to be used as aforesaid; that he has paid said White nothing on the said contract with him; but said

White claims damages or compensation from him for the non-performance of his said contract with the said White; that said lot was in the possession of a tenant, and he knows said White was put to trouble and to some expense in getting rid of said tenant for the purpose of giving possession thereof to the plaintiff for the purpose aforesaid; and he further proved, that shortly after his contract with the defendant as aforesaid, he entered into a sub-contract with one Emanuel Irons, a competent and responsible brick-mason, for supplying the said lime and labor, and laying the bricks to be supplied by the plaintiff as aforesaid ; and that the price to be paid by the plaintiff to the said Irons for materials and labor to be furnished by him was at the rate of three dollars and fifty-eight cents per thousand of bricks to be laid by him ; that he, the plaintiff, has paid nothing to the said Irons on the said contract; but the said Irons claims damages or compensation for the non-performance of his said contract with the said Irons; and he knows that said Irons, in part execution of said contract, hauled to the said site one hundred and fifty loads of sand, and dug out of the bank some seven hundred other loads of sand for the purpose of hauling the same to the said site. The plaintiff then read in evidence the ordinance of the defendant approved April the 5th, 1861. And also read the following letter from George Wm. Brown, at the time mayor of the city of Baltimore :

"MAYOR'S OFFICE,

"Baltimore, April 8th, 1861.

Sir :—I hereby give you notice that an ordinance has been passed, by the Mayor & City Council of Baltimore, directing that the building designed for an alms-house, heretofore commenced on the farm purchased of A. W. Goldsborough, be discontinued and stopped.

"Respectfully,

"GEO. WM. BROWN, Mayor.

"To L. B. Rittenhouse."

And further to sustain the issue on his part, and to prove his ability and readiness to perform his aforesaid contract with the defendant, he proved that for the last fifteen years he has been engaged in the manufacture of bricks in and near the city of Baltimore, and that at the date of his contract with the said defendant he had machinery and also stock of boards and utensils in quantity to enable him to execute his said contract, and that he had on hand six hundred thousand bricks of his own manufacture, which were of ready sale in the market, but which he retained in hand in consequence of said contract, and to enable him to supply any demand which the defendant might make on him for bricks before he could commence making bricks on the lot of said White; and that after the repealing ordinance had been passed and notice thereof given to him as aforesaid, he sold said bricks at prices averaging about one dollar and fifty cents per thousand less than he could have realized by a sale of them in November, 1860. And, thereupon, the plaintiff, further to support his claim for damages on the third item of his bill of particulars, asked the said witness, *Rittenhouse*, what would have been the cost to him of manufacturing bricks of the quality required for the fulfilment of his aforesaid contract with the defendant on the said lot of the said White in the year 1860, and what would have been the cost of hauling said bricks from the said lot to the site of the alms-house building aforesaid? But the said defendant objected to said question, and the evidence offered on the part of the said plaintiff being so offered and admitted, subject to exception the said defendant further prayed the Court to exclude all such parts of said evidence as related to the said contracts between the said plaintiff and the said White and the said Irons, and as relates to damages claimed by the said plaintiff by reason of the repeal of the ordinance first aforesaid, offered in evidence, and of the refusal of the defendant to permit the plaintiff to proceed in the execution

of his contract with the defendant as aforesaid, after the passing of the said repealing ordinance.

Whereupon, the Court, on said objection and prayer of the defendant as aforesaid, refused to permit the said question to be put to the witness, and withdrew from the consideration of the jury all said parts of the evidence so given to the jury, and now excepted to by the defendant as aforesaid,—being of opinion, and so declaring, that the said repealing ordinance was passed by the said defendant in exercise of its legislative power, and that the said repeal determined its obligation to proceed further in the execution of the contract made between them and the said plaintiff, so entered into under the provisions of the ordinance first aforesaid, and that although the said plaintiff might recover on the said first item of claim in the bill of particulars any damage which he had actually sustained by reason of the contract so entered into between him and the said defendant, and before the enactment of the said repealing ordinances, and whilst said contract was in force, were not entitled to claim in this action any damage as indemnity against any loss to which he may have become liable to the said White and the said Irons, by reason of his said subsidiary contracts with them, and there is no evidence of damage actually incurred by him by reason thereof, and that the said plaintiff is not entitled to recover any probable profits which he might have realized if he had been permitted to execute his contract with the defendant, made as aforesaid.

To which said opinion of the Court, and to the exclusion of evidence as aforesaid, and the refusal of the Court to permit the aforesaid question to be answered, the plaintiff excepted, and the verdict and judgment being for the defendant, brought this appeal.

The cause was argued before BARTOL, GOLDSBOROUGH, and WEISEL, J.

*Thos. S. Alexander* and *E. G. Kilbourn*, for the appellant:

1st. The Court declared that the repealing ordinance having been passed by the defendant "in the exercise of its legislative power, determined their obligation to proceed further in the execution of the contract."

It may be conceded that a city, having entered upon the construction of a work of public improvement, may suspend the further prosecution thereof if the public interests shall so require. But it is not hence to be concluded that a city may contract with an individual for materials or labor to be applied to a public work, and may afterwards, by suspending the work, relieve itself from the obligation of its contract.

The distinction between the power of a municipal corporation to enter upon a work of public improvement, and afterwards, at pleasure, to abandon that work, and its responsibility in damages to individuals who may have been injured by the exercise of its power, is well taken in *Graff vs. The Mayor, &c., of Baltimore* 10 *Md. Rep.*, 544; and nothing inconsistent with this distinction is to be found in *State vs. Graves,* 19 *Md. Rep.*, 351, 373, 374.

To affirm that a municipal corporation may, under a pretext of a change in its policy, annul the obligation of its contracts made with individuals, is to arrogate for such corporation a more absolute sovereignty than is possessed by the State, to whom it owes its existence. By the Constitution of the United States, Article 1, section 10, no State shall pass any law impairing the obligation of contracts, and by fair implication no State can be permitted to confer on an inferior organization a power which is denied to itself.

In a similar case, in New York, the corporation was declared to be answerable for all damages resulting from its non-performance of its agreement. *Masterton vs. Mayor of Brooklyn,* 7 *Hill,* 63. *State vs. Mayor, &c.,* 3 *Duer,* 119, 131, 153, 154. *Western Society vs. Philadelphia, &c.,* 31 *Penna.,* 175. *Milhau vs. Sharp,* 17 *Barb.,* 435.

2nd. In an action brought against a municipal corporation for non-performance of its contract, the measure of damages is precisely the same with that which would be adopted, in a like case, against an individual.

The Court erred, therefore, in its instruction that the plaintiff was not entitled to recover any probable profits which he might have realized if he had been permitted to execute his contract made with the defendant. And in such case the measure of damages is the profits which he might reasonably have realized if he had been permitted to execute his contract. *Masterton vs. Mayor of Brooklyn*, 7 *Hill*, 63. *Phila. W. & B. R. R. Co. vs. Howard*, 13 *How.*, 307, 344. 3 *Pars. on Cont.*, 187. 3 *Vermont*, 582.

3rd. If it is considered that the defendant, by the enactment of its repealing ordinance, annulled the obligation of its contract with the plaintiff, *in such case* the plaintiff will be entitled to an indemnity against the liabilities which he assumed, and an equivalent for moneys expended and labor bestowed by him in and about the matter of the contract, prior to receiving notice of the passage of the repealing ordinance.

*William Price* and *Benjamin Price*, for the appellee :

The declaration states that the action is for a breach of contract, but does not assign the breach. It is nowhere shown in what the breach consists. The bill of particulars filed by the plaintiff below throws no additional light upon the subject.

The ordinance of April 28th, 1860, was properly repealed by that of April 5th, 1861. Its repeal was no violation of contract. The appellee possessed jurisdiction and power, in its public or municipal character, to pass the repealing ordinance, and have validly exercised that power. The contract must be understood as having been entered into with full

knowledge of, and subject to the power of the appellee to repeal its ordinance of 1860, and to abandon the site, and with it the work, if in its judgment the public good demanded it. No corporation has the power to make a contract injurious to the health of the city, whose affairs it controls, or of any portion of its citizens. *Stuyvesant vs. Mayor & C. C., &c.*, 5 *Cow.*, 540. *Bailey vs. Mayor & C. C. of N. Y.*, 3 *Hill*, 531. *Western Savings Fund Society vs. The City of Phila.*, 31 *Pa.*, (7 *Casey*,) 175, 185. *Moodalay vs. East Ind. Co.*, 1 *Bro. Ch. R.* 469.

There is also a distinction between the acts of the Mayor and C. C. of Balto. in an individual capacity, or for speculative or like purposes, and its acts as a public municipal corporation. This distinction is recognized by the cases above referred to, and in cases referred to by the appellant's counsel.

The case cited from 10 *Md. Rep.*, 544, is a case where damages had already been sustained prior to the termination of the contract. The case cited from 19 *Md. Rep.*, 351, is rather an authority to support the case of the appellee.

They also referred to the Acts of 1861 and 1862, ch. 279, secs. 34 and 39.

BARTOL, J., delivered the opinion of this Court.

The bill of exceptions in this case presents the question of the liability of the appellee, upon a contract made with the appellant, for brick-mason's work and materials to be done and furnished in the erection of an alms-house. The contract was made under an ordinance of the city, approved April 28th, 1860, which provided for the purchase of a site and the erection of a new alms-house.

After the buildings had been commenced and some work done by the contractors, an ordinance was passed and approved on the 5th of April, 1861, reciting that a farm had been purchased from A. W. Goldsborough for the site of a new

alms-house, which is now ascertained not to be suitable or adapted for the purpose, because *it is unhealthy*; and declaring that the public good required the building to be discontinued, and the site to be abandoned, and another more suitable to be selected. It repealed the ordinance of 1860, and directed the committee having charge of the work to settle with the contractors, as far as it could be done, upon fair and equitable terms.

No settlement having been made with the appellant, he brought this action to recover damages for a breach of the contract made with him by the appellee. By the bill of particulars filed he claimed:

1st. His actual outlays in the preliminary steps for executing the contract, $500.00.

2nd. An indemnity against his liabilities towards those with whom he had contracted, to enable him to fulfil his contract with the city, $7,500.00.

3rd. Damages equivalent to the profits which he would have realized on said contract with the city if he had been permitted to execute the same, $20,000.00.

In considering the rights, powers and liabilities of public municipal corporations, in respect to contracts made by them, regard must be had to the subject matter to which such contracts relate, and the character in which the municipal body acts in making them. Where the corporation appears in the character of a mere property holder, and enters into a contract with reference to such property as any private citizen or other proprietor might do; or where it engages in an enterprise, not necessarily connected with or growing out of its public capacity, as a part of the local government; there all its rights and liabilities are to be measured and determined by the same rules as govern mere individual persons, or private corporations; and it cannot claim exemption or immunity from the legal liabilities growing out of its contracts,

by reason of its public municipal character. The cases of *Bailey vs. The Mayor, &c., of New York*, 3 *Hill*, 531. *Masterton vs. The Mayor, &c., of Brooklyn*, 7 *Hill*, 61, and *The Western Saving Fund Society vs. The City of Phila.*, 31 *Pa.*, (7 *Casey*,) 175 & 185, are illustrations of this principle. See, also, *Moodalay vs. The East India Company*, 1 *Brown's Ch. R.*, 469.

The same cases recognize a distinction between the rights and liabilities of municipal corporations growing out of contracts made by them, in their private capacity, as property holders, and those which arise out of the exercise of powers entrusted to them in their municipal character exclusively for public purposes, with regard to which Courts have no power to review or control their acts, unless they transcend the limits of their delegated powers.

In the case of *The Presbyterian Church vs. The Mayor, &c., of New York*, 5 *Cowen*, 538, which was an action by the church against the city upon a covenant for quiet enjoyment, the corporation had conveyed lands to the plaintiff for the purpose of a church and cemetery, with a covenant for quiet enjoyment; afterwards the corporation, in the exercise of a power delegated to it by an Act of the Legislature, passed a by-law prohibiting the use of the lands as a cemetery. It was held that this was not a breach of the covenant which entitled the plaintiff to damages, but was a repeal of the covenant. It was held that a municipal corporation cannot, by contract, abridge its legislative power. The ground of the decision was, that while the liability of "the defendants upon the covenant was the same as if it had been entered into by an individual, the effect of the by-law upon it was the same as if this had been an Act of the State Legislature." The rule as stated in 1 *Salk.*, 193, was applied, viz: "If H. covenants to do a thing which is lawful, and an Act of Parliament comes in and hinders him from doing it, the covenant is repealed." And though the corporation had enter-

ed into the covenant, it was not, for that reason, prevented from passing the by-law or estopped from relying upon it in defence; because in passing the by-law it acted in its public legislative capacity, in which its powers could not be abridged by any previous covenant into which it had entered.

The principles of that decision were afterwards re-affirmed, by the same Court, in *Coates vs. The Mayor, &c., of N. Y.,* 7 *Cowen,* 585, and have been recognized and approved by this Court in *State, relation of McClellan, vs. Graves,* 19 *Md. Rep.,* 351,

Applying these principles to the case before us, we have been led to the following conclusions;

1st. That the subject matter of the ordinance of 1860, under which the contract sued on was made, was one over which the appellee possessed jurisdiction and power to legislate, and that consequently the repealing ordinance of 1861 was valid as passed in the exercise of the powers belonging to the appellee in its public, political or municipal character.

2nd. That the contract must be taken and construed as being made subject to the power of the corporation to repeal the ordinance of 1860, and to abandon or discontinue the work if, in their judgment, the public good so required, and consequently the appellant is not entitled to claim any damages on account of profits he might have realized under the contract if he had been permitted to go on with the work; and the evidence offered at the trial, for the purpose of supporting the third item of damage in the bill of particulars, was properly rejected by the Court below.

We are also of opinion that there was no error in rejecting the evidence with regard to damages claimed in the second item of the bill of particulars as indemnity against any loss to which the appellant may have become liable by reason of his subsidiary contracts with White and Irons, for the reason that the evidence on that subject is vague and indefinite,

and there was no proof offered of any damage actually incurred by reason thereof.

We concur, also, generally in the views expressed by the judge of the Superior Court as to the right of the appellant to recover under, the first item of claim in the bill of particulars, any damage which he had actually sustained by reason of the contract, while the same was operative and in force.

There was proof offered that the appellant had been, for fifteen years, engaged in the manufacture of bricks near the city of Baltimore, and that at the date of the contract he had on hand 600,000 bricks of his own manufacture, which were of ready sale in the market, but which he retained in hand in consequence of the contract, and to enable him to supply bricks necessary for the work. That after the repealing ordinance had been passed, and he received notice thereof, he sold the bricks at prices averaging about one dollar and fifty cents per thousand less than he could have realized by a sale of them in November, 1860.

Unquestionably, that item of loss and damage, if found by the jury, would be properly recoverable in this action. And some parts of the instruction of the Court below are susceptible of a construction which would allow the appellant to recover in respect to this item. The instruction does not seem to have been so construed by the appellant's counsel; and there is one expression in the Court's instruction that might mislead the jury in regard to this item of claim;—the appellant was limited to recover "any damage which he had actually sustained by reason of the contract, and *before the enactment of the repealing ordinance.*" With regard to the damage resulting from the loss in the sale of the bricks, it might be said that it had not been actually sustained till they were sold, which was after the repealing ordinance had been passed, and thus, under the instruction, the jury may have considered it as excluded. Considering that this dam-

age, if found by the jury, was one actually suffered under the contract while it was in force, although the amount of it was not ascertained till afterwards, and ought to be allowed, and believing the jury may have been misled by the language of the Court, we think there ought to be a new trial, and will, therefore, reverse the judgment and award a writ of *procedendo.*

*Judgment reversed, and*
*procedendo awarded.*

(Decided July 11th, 1866.)