## CHARLES M. COLEMAN *vs.* RUFUS W. APPLEGARTH and PATRICK BRADLEY.

*Written Option to Purchase land—Verbal agreement to Extend time for the exercise of Option—Nudum pactum—Continuing offer to Sell—Termination of Offer.*

A. agreed in writing, in consideration of five dollars, to give to C. the option of purchasing for a given price, a lot of ground in the City of Baltimore, on or before the 1st of November, 1886. Before the expiration of the time thus limited, A. verbally agreed to extend the time for the exercise of the option by C. to the 1st of December, 1886. About the 9th of November, 1886, A. sold and conveyed the lot in question to B. Subsequently, but prior to the 1st of December, 1886, C. tendered to A. the sum which had been agreed up-? ? ? ?manded a deed of the lot which was refused. On a bill ? ? ?, ? ? ?st A. and B. for a specific performance of the con-?? ? ?? ?? ??h C. it was HELD :

Tha? ? ??? ? ??? consideration for the verbal promise or agreement to ? ??? ? ??. ? the exercise of the option, such promise was a mere *n?? ? ? ?? ?* ?nd therefore not enforceable.

Coleman *vs.* Applegarth and Bradley.

After the first of November, 1886, the verbal agreement of A. operated simply as a mere continuing offer at the price previously fixed, and which offer only continued until it should be withdrawn or otherwise ended by some act of his; but he was entirely at liberty at any time, before acceptance, to withdraw the offer; and the subsequent sale and transfer of the property to B. had the effect of at once terminating the offer to C.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., STONE, MILLER, ROBINSON, and BRYAN, J.

*Richard Bernard*, for the appellant.

Where for a valuable consideration a written option is given to purchase land within a given time at a fixed price, is the vendee, upon a tender of the price within the time, entitled to a specific performance? This we submit upon authority is hardly an open question. *Waterman on Spec. Perform.*, sec. 200; *Frey on Spec. Perform.*, sec. 445; *Pomeroy on Spec. Perform.*, sec. 169; *Stansbury vs. Fringer*, 11 Gill & J., 152; *Palmer vs. Scott*, 1 Russ. & Myl., 391; *Hall vs. Center*, 40 Cal., 68.

So will an optional contract without consideration if the contract is completed by acceptance. *Boston and Maine R. R. vs. Bartlett*, 3 Cush., 224.

That there are cases of optional contracts that will not be enforced by reason of want of mutuality, is quite true. *Sigmund vs. Howard Bank of Baltimore*, 27 Md., 334.

The doctrine of mutuality, though formerly very much misunderstood, is now well settled. "If when the cause comes on for hearing, the plaintiff's part of the agreement has not been performed, and its fulfilment by him cannot be secured, there is a want of mutuality between the parties." *Adams' Equity*, *82.

Coleman *vs.* Applegarth and Bradley.

The second question presented is : Could the appellant enforce specific performance if Applegarth had not parted with the lot of ground in question at the time of filing the bill in this case ? In other words, is the verbal agreement to extend the time within which to complete the purchase, valid ? In Maryland "it is well settled that in case of a simple contract in writing, oral evidence is admissible to show that, by a subsequent agreement, the time of performance was enlarged, or the place of performance changed." 1 *Greenl. on Ev., sec.* 304; *Coates vs. Sangston,* 5 *Md.*, 131; *Irwin vs. Sanders,* 1 *Cow.*, 249; *Frost vs. Everett,* 5 *Cow.*, 497; *Keating vs. Price,* 1 *Johns. Cas.*, 22; *Flemming vs. Gilbert,* 3 *Johns.*, 530; *Robinson vs. Batchelder,* 4 *N. H.*, 45; *Stearns vs. Hall,* 9 *Cushing,* 31; *Alex. Br. Stat.*, 543, 544.

"The principle is well settled that even where the time of payment is of the essence of the contract, a strict compliance at the day may be waived by the vendor," and such waiver will be a just excuse for non-compliance within the time. *Reed vs. Chambers,* 6 *Gill & J.*, 490.

If the verbal agreement to extend the time required a distinct and separate consideration, it must be because it was a new and distinct contract. If it was a new and distinct contract, it was a contract for the sale of an interest in land, and therefore should be in writing. If such an agreement is not required to be in writing it must be because it is not a new contract, and for precisely the same reason it required no new consideration.

"It has been frequently determined that a subsequent parol agreement to postpone the delivery of articles under a written contract without seal is not a waiver of the contract, but an enlargement of the time of performance of it. An agreement to extend the time of performance of a contract is not a waiver but a continuance of the original contract." *Watkins vs. Hodges,* 6 *Harr. & J.*, 38, and cases are cited.

If we are right in our views on the question of the necessity of a distinct consideration to support the verbal agreement, it manifestly follows that it requires no further argument or authority to combat the reasoning or the authorities cited by the Court below.

The last question is, was Bradley a *bona fide* purchaser without notice, actual or constructive? The law and facts on this branch of the case are free from doubt. *Hudson vs. Warner*, 2 *Harr. & G.*, 429; *Price vs. McDonald*, 1 *Md.*, 414; *Smoot vs. Rea & Andrews*, 19 *Md.*, 404; *Maxfield vs. Burton*, *L. R.*, 17 *Eq. Cases*, 15; *Waldron vs. Jacob*, 5 *Irish Eq.*, 136; *Graff vs. Castleman*, 5 *Rand.*, 207; *Pringle vs. Phillips*, 5 *Sandf.*, 207.

*Sebastian Brown*, and *Rufus W. Applegarth*, for the appellees.

The option to purchase, under the Statute of Frauds, could only have been extended in writing, and the verbal agreement on the part of Applegarth was void.

" Where the Statute of Frauds requires a contract to be in writing to make it valid, it cannot be partly in writing and partly in parol. It must be entirely in writing." *Lazear vs. National Union Bank*, 52 *Md.*, 78; · *Moore vs. Buchanan*, 11 *G. & J.*, 314; *Frank vs. Miller*, 38 *Md.*, 460; *Kidd vs. Carson*, 33 *Md.*, 37; *Taney vs. Batchell*, 9 *Gill*, 460.

" The better opinion is that a written contract falling. within the Statute of Frauds cannot be varied by any subsequent agreement of the parties unless such new agreement is also in writing." *Swain vs. Seamens*, 9 *Wall.*, 254; *Clarke vs. Russell*, 3 *Dall.*, 415, 424; *Blood vs. Goodrich*, 9 *Wend.*, 68, 79; *Ladd vs. King*, 1 *R. I.*, 234.

Where parties contract with reference to time it is an essential element and must be carried out accordingly if not in writing is void under the statute. *Maccubbin vs. Perry*, 35 *Md.*, 359, 360.

Coleman *vs.* Applegarth and Bradley.

There was no consideration to support the agreement to extend the time of the option, even if the verbal agreement was valid under the Statute of Frauds. An agreement extending the time, not of payment, but for exercising the option is a new contract and void for want of a consideration. Being without consideration Applegarth could withdraw at any time before acceptance. 1 *Benjamin on Sales*, sec. 64, *et seq.* And even though the offer to renew the proposal or option for a term of thirty days longer were in writing it would still be void for want of consideration. *Wyman vs. Gray*, 7 *H. & J.*, 409; *Elliott vs. Giese*, 7 *H. & J.*, 457; *Culbertson vs. Smith*, 62 *Md.*, 634.

The verbal agreement to extend the option to purchase being without consideration, it was *nudum pactum* and void, and if he relies upon his acceptance, as constituting a binding contract, he must fail, for he knew at the time that Applegarth had sold the property and so substantially revoked his offer, before the time of acceptance; for it has been held that where the parties are in immediate communication, a proposal may be revoked without notice to the person to whom it is made. *Cooke vs. Oxley*, 3 *Term. Rep.*, 653; *Dickinson vs. Dodds, L. R.*, 2 *Ch. Div.*, 463; *Benjamin on Sales*, sec. 64, *&c.; Anson's Law of Contracts*, 17, 18.

Unilateral or optional contracts are not favored in equity, and it has been held, both in England and in this country, that the want of mutuality of obligation and remedy is a bar to specific performance. *Waterman on Specific Perform.*, sec. 200; *Geiger vs. Green*, 4 *Gill*, 474; *Lawrenson vs. Butler*, 1 *Sch. & Lef.*, 18; *Mackey, Ex'r & Kelso vs. Daniel, et al.*, 59 *Md.*, 489; *Sullivan vs. Tuck*, 1 *Md. Ch. Dec.*, 59; *Fardy vs. Williams*, 38 *Md.*, 502; *Griffith vs. Frederick County Bank*, 6 *G. & J.*, 439.

Bradley was an innocent purchaser for value without notice, and he cannot be disturbed in his possession.

Coleman *vs.* Applegarth and Bradley.

ALVEY, C. J., delivered the opinion of the Court.

Coleman, the appellant, filed his bill against Applegarth and Bradley, the appellees, for a specific performance of. what is alleged to be a contract made by Applegarth with Coleman for the sale of a lot of ground in the City of Baltimore. The contract, upon which the application is made, and which is sought to be specifically enforced, reads thus: " For and in consideration of the sum of five dollars paid me, I do hereby give to Charles Coleman the *option* of purchasing my lot of ground, northwest corner, &c., assigned to me by Wright and McDermot, by deed, dated, &c., subject to the ground rent therein mentioned, at and for the sum of $645 cash, *at any time on or before the 1st day of November*, 1886." It was dated the 3d of Sept., 1886, and signed by Applegarth alone.

The plaintiff, Coleman, did not exercise his option to purchase within the time specified in the contract; but he alleges in his bill that Applegarth, after making the contract of the 3d of Sept., 1886, and before the expiration of the time limited for the exercise of the option, verbally agreed with the plaintiff to extend the time for the exercise of such option, to the 1st of December, 1886. It is further alleged that, about the 9th of Nov., 1886, without notice to the plaintiff, Applegarth sold, and assigned by deed, the lot of ground to Bradley, for the consideration of $700; and that, subsequently, but prior to the 1st of December, 1886, the plaintiff tendered to Applegarth, in lawful money, the sum of $645, and demanded a deed of assignment of the lot of ground, but which was refused. It is also charged that Bradley had notice of the optional right of the plaintiff at the time of taking the deed of a, signment from Applegarth, and that such deed was mac in fraud of the rights of the plaintiff under the contract Sept. 3d, 1886. The relief prayed is, that the deed Bradley may be declared void, and that Applegarth ma be decreed to convey the lot of ground to the plainti

Coleman *vs.* Applegarth and Bradley.

upon payment by the latter of the $645 ; and for general relief.

The defendants, both Applegarth and Bradley, by their answers, deny that there was any binding contract, or optional right, existing, in regard to the sale of the lot, as between Applegarth and the plaintiff, at the time of the sale and transfer of the lot to Bradley ; and the latter denies all notice of the alleged agreement for the extension of time for the exercise of the option by the plaintiff ; and both defendants rely upon the Statute of Frauds as a defence to the relief prayed.

The plaintiff was examined as a witness in his own behalf, and he also called and examined both of the defendants as witnesses in support of the allegation of his bill. But, without special reference to the proof taken, the questions that are decisive of the case may be determined upon the facts as alleged by the bill alone, in connexion with the contract exhibited, as upon demurrer ; such facts being considered in reference to the grounds of defence interposed by the defendants.

The contract set up is not one of sale and purchase, but simply for the option to purchase within a specified time, and for a given price.  It was unilateral and binding upon one party only.  There was no mutuality in it, and it was binding upon Applegarth only for the time stipulated for the exercise of the option.  After the lapse of the time given, there was nothing to bind him to accept the price and convey the property ; and the fact that this unilateral agreement was reduced to writing added nothing to give it force or operative effect beyond the time therein limited for the exercise of the option by the plaintiff.  It is quite true, as contended by the plaintiff, that, as a general proposition, time is not deemed by Courts of equity as being of the essence of contracts; and that, in perfected contracts, ordinarily, the fact that the time for performance has past will not be regarded as a reason for withholding

specific execution. But while this is the general rule upon the subject, that general rule has well defined exceptions, which are as constantly recognized as the general rule itself. If the parties have, as in this case, expressly treated time as of the essence of the agreement, or if it necessarily follows from the nature and circumstances of the agreement that it should be so regarded, Courts of equity will not lend their aid to enforce specifically the agreement, regardless of the limitation of time. 2 *Sto. Eq. Juris.*, sec. 776. Here, time was of the very essence of the agreement, the nominal consideration being paid to the owner for holding the property for the specified time, subject to the right of the plaintiff to exercise his option whether he would buy it or not. When the time limited expired, the contract was at an end, and the right of option gone, if that right has not been extended by some valid binding agreement, that can be enforced. This would seem to be the plain dictate of reason, upon the terms and nature of the contract itself; and that is the plain result of the decision of this Court, made in respect to an optional contract to purchase, in the case of *Maughlin vs. Perry & Warren*, 35 *Md.*, 352, 359, 360.

As must be observed, it is not alleged or pretended that the plaintiff attempted to exercise his option, and to complete a contract of purchase, within the time limited by the written agreement of the 3rd of Sept., 1886. But it is alleged and shown that before the expiration of such time, the defendant, Applegarth, verbally agreed or promised to extend the time for the exercise of the option by the plaintiff, from the 1st of Nov. to the first of December, 1886; and that it was within this latter or extended period, and after the property had been sold and conveyed to Bradley, that the plaintiff proffered himself ready to accept the property and pay the price therefor. It is quite clear, however, that such offer to accept the property came too late. There was no consideration for

the verbal promise or agreement to extend the time, and such promise was a mere *nudum pactum*, and therefore not enforceable, to say nothing of the Statute of Frauds, which has been invoked by the defendants. After the 1st of November, 1886, the verbal agreement of Applegarth operated simply as a mere continuing offer at the price previously fixed, and which offer only continued until it should be withdrawn or otherwise ended by some act of his; but he was entirely at liberty at any time, before acceptance, to withdraw the offer; and the subsequent sale and transfer of the property to Bradley, had the effect at once of terminating the offer to the plaintiff. *Pom. Spec. Perf. of Conts.*, secs. 60, 61.

The principles that govern in cases like the present are very fully and clearly stated by the English Court of Appeal in Chancery, in the case of *Dickinson vs. Dodds*, 2 *Ch. Div.*, 463. That case, in several of its features, is not unlike the present. There the owner of property signed a document which purported to be an agreement to sell it at a fixed price, but added a postscript, which he also signed, in these words: "This offer to be left over until Friday, 9 o'clock, a. m."—two days from the date of the agreement. Upon application of the party, who claimed to be vendee of the property, for specific performance, it was held, upon full and careful consideration by the Court of Appeal, that the document amounted only to an offer, which might be withdrawn at any time before acceptance, and that a sale to a third person which came to the knowledge of the person to whom the offer was made was an effectual withdrawal of the offer. In the course of his judgment, after declaring the written document to be nothing more than an offer to sell at a fixed price, Lord Justice JAMES said: "There was no consideration given for the undertaking or promise, to whatever extent it may be considered binding, to keep the property unsold until 9 o'clock on Friday morning; but apparently Dickinson was

Coleman *vs.* Applegarth and Bradley.

of opinion, and probably Dodds was of the same opinion, that he (Dodds) was bound by that promise, and could not in any way withdraw from it, or retract it, until 9 o'clock on Friday morning, and this probably explains a good deal of what afterwards took place. But it is clear settled law, on one of the clearest principles of law, that this promise, being a mere *nudum pactum*, was not binding, and that at any moment before a complete acceptance by Dickinson of the offer, Dodds was as free as Dickinson himself. That being the state of things, it is said that the only mode in which Dodds could assert that freedom was by actually and distinctly saying to Dickinson, ' Now I withdraw my offer.' It appears to me that there is neither principle nor authority for the proposition that there must be an express and actual withdrawal of the offer, or what is called a retractation. It must, to constitute a contract, appear that the two minds were at one, at the same moment of time, that is, that there was an offer continuing up to the time of the acceptance. If there was not such a continuing offer, then the acceptance comes to nothing." And Lord Justice MELLISH was quite as explicit in stating his judgment, in the course of which he said : " He was not in point of law bound to hold the offer over until 9 o'clock on Friday morning. He was not so bound either in law or in equity. Well, that being so, when on the next day he made an agreement with Allan to sell the property to him, I am not aware of any ground on which it can be said that that contract with Allan was not as good and binding a contract as ever was made. Assuming Allan to have known (there is some dispute about it, and Allan does not admit that he knew of it, but I will assume that he did) that Dodds had made the offer to Dickinson, and had given him till Friday morning at 9 o'clock to accept it, still, in point of law, that could not prevent Allan from making a more favorable offer than Dickinson, and entering at once into a binding agreement with

Coleman *vs.* Applegarth and Bradley.

Dodds." And further on he says: " If the rule of law is that a mere offer to sell property, which can be withdrawn at any time, and which is made dependent on the acceptance of the person to whom it is made, is a mere *nudum pactum*, how is it possible that the person to whom the offer has been made can by acceptance make a binding contract after he knows that the person who has made the offer has sold the property to some one else? It is admitted law that, if a man who makes an offer dies, the offer cannot be accepted after he is dead, and parting with the property has very much the same effect as the death of the owner, for it makes the performance of the offer impossible. I am clearly of opinion that, just as when a man who has made an offer dies before it is accepted it is impossible that it can then be accepted, so when once the person to whom the offer was made knows that the property has been sold to some one else, it is too late for him to accept the offer; and on that ground I am clearly of opinion that there was no binding contract for the sale of this property by Dodds to Dickinson."

In this case, the plaintiff admits that, at the time he proffered to Applegarth acceptance of the previous offer to sell at the price named, he was aware of the fact that the property had been sold to Bradley. It was therefore too late for him to attempt to accept the offer, and there was not, and could not be made, by such proffered acceptance, any binding contract of sale of the property.

It follows that the decree of the Court below, dismissing the bill of the plaintiff, must be affirmed.

*Decree affirmed.*

(Decided 18th November, 1887.)