AMERICAN MEDICINAL SPIRITS COMPANY *v.*
MAYOR AND CITY COUNCIL OF BALTIMORE.

MAYOR AND CITY COUNCIL OF BALTIMORE *v.*
AMERICAN MEDICINAL SPIRITS COMPANY.

[Nos. 40, 41, April Term, 1933.]

*Decided May 26th, 1933.*

The cause was argued before Bond, C. J., Pattison, Urner, Adkins, Offutt, Digges, Parke, and Sloan, JJ.

*Raphael Walter,* with whom were *Sykes, Nyburg, Goldman & Walter* on the brief, for American Medicinal Spirits Company.

130

*Allen A. Davis* and *S. Wilmer Pleasants, Assistant City Solicitors,* with whom was *R. E. Lee Marshall, City Solicitor,* on the brief, for Mayor and City Council of Baltimore.

PARKE, J., delivered the opinion of the Court.

The American Medicinal Spirits Company and its predecessors in title were the owners of a parcel of land in Baltimore City which fronted on the west side of Russell Street the distance between the south side of Stockholm Street and the north side of Alluvian Street. The land was improved by three separate warehouses whose front walls were in the building line of Russell Street. In order to widen this street from sixty-six feet to one hundred feet, the municipality passed an ordinance on May 14th, 1926, and pursuant to its provisions duly acquired a fee simple title to that portion of this land which is included between the western boundary line of Russell Street and a line beginning in the northern edge of Alluvian Street thirty-four feet west from Russell Street and running thence northeastwardly, at a right angle with Alluvian Street, a distance of 270.76 feet to intersect Russell Street, after it turns to the northeast. The projected widening of Russell Street involved the removal of a corresponding portion of the front of every one of the three warehouses, which were specially constructed and used for the storage of whiskey in barrels; and the construction of new front walls. The company was awarded the sum of $50,000, and was obliged to remove, at its own expense, those parts of the three warehouses which were on the parcel taken, but whether it was to keep the material salvaged seems in controversy. The award was paid on December 15th, 1930, by the municipality to the company, which thereupon conveyed the land. Pending the time when the strip would be required for its contemplated physical incorporation in the street, the city permitted the warehouses to occupy the land granted without requiring the removal or change in the improvements, and without having received any rent or reward for this occupancy. Since December 15th, 1930, no taxes have

been paid on this parcel. See Charter, art. 1, sec. 6 (26) (A), Code Pub. Loc. Laws 1930, art. 4, sec. 6 (26) (a).

The widening of this particular section of Russell Street remained in abeyance until 1931, when, upon the assumption that the authorized improvement would not be made, representatives of the city and the company carried on negotiations which culminated in a document of August 24th, 1931, which purported to be an agreement of the Mayor and City Council of Baltimore and of the company. The paper writing was duly executed by the company, and the name of the municipality was subscribed by the mayor, its seal affixed, and the execution attested. The mayor, comptroller, city register, and a commissioner of finance, also, signed in their official capacities to signify their approval of the terms of the agreement.

The instrument thus executed recited that the Mayor and City Council of Baltimore, in consideration of the payment of the sum of $50,000, without interest, in an installment of $10,000 on the day of the execution of the agreement, and in four credit installments of $10,000 payable on the 1st day of September in the years 1932, 1933, 1934, and 1935, did thereby sell and agree to convey, to the company, the fee simple title, free of all incumbrances, to the identical parcel of land, with the improvements thereon, which the municipality had previously acquired from the company by its deed of December 15th, 1930. The company promised to buy on these terms, and to make the final payment at the time of delivery to the said company of a valid deed for the property, with taxes paid to September 1st, 1935.

The terms which were stipulated, and require statement, are:

1. The agreement was made subject to the passage (1) of an ordinance for the purpose of closing that portion of Russell Street which was the location of the parcel sold and conveyed; and (2) of an ordinance authorizing the disposal or sale of the property mentioned when the proceedings for the closing of Russell Street under the first ordinance should have been completed.

2. The company was to be entitled to the possession of the premises sold upon the payment of $10,000 on the signing of the agreement, and the municipality was to waive all claim for use and occupancy of the premises before the execution of the agreement.

3. The failure of the company to pay any installment as due, and the continuance of such default for a period of thirty days, after the notice provided, should constitute the company a tenant at will, with an obligation to surrender the premises upon ten days' written notice. In the event of the prescribed default, after notice, all moneys paid should be considered and retained as rent.

4. The importance of this next paragraph requires it to be quoted:

> "It is further understood and agreed, That in the event that the Mayor and City Council of Baltimore shall fail or refuse to pass the ordinances herein provided within one year from day hereof, then this agreement shall be void and of no effect, and all moneys paid under this agreement shall be returned to the party of the second part (company), and upon the return of said payments, the party of the first part (municipality) shall be entitled to take possession of the premises mentioned herein within ninety days after notice of such failure or refusal."

The importance of these stipulations lies in the conditions and limitations of the statutory law in connection with which the stipulations must be read. In the first place, after the title to the land had been duly acquired by the Mayor and City Council of Baltimore as a part of the roadbed of the widened street, the title to this land became inalienable, except in the mode and manner prescribed by law, which, while providing for laying out, opening, extending and widening any street within the bounds of the city, confers the power to close up, in whole or in part, any street which the public welfare or convenience may require. Charter & P. L. L. of Baltimore City (Wallace), art. 1, sec. 7, p. 55, art. 1, sec. 6 (26) (A), p. 34 (Code Pub. Loc. Laws, 1930,

art. 4, secs. 7, 6 (26) (a); Minor Privilege Cases, 131 Md. 600, 605, 102 A. 1014. So, any parcel no longer needed for public use may be disposed of "provided that such disposition shall be authorized and provided for by ordinance, and shall be approved by the Commissioners of Finance by their uniting in the conveyance thereof, and shall be made at public sale, unless a private sale be expressly authorized by the Board of Estimates, and so entered on their minutes." Article 1, section 13 of Charter (Wallace), note 58; Code Pub. Loc. Laws, 1930, art. 4, sec. 13. See *Rittenhouse v. Baltimore,* 25 Md. 336.

These statutory requisites to the abandonment or closing of that section of Russell Street, whose title is in the municipality, and which is the subject-matter of the pending controversy, and to its disposition by sale when no longer needed for public use, did not exist before or at the signing of the paper writing of August 24th, 1931, so those acting for the municipality had no capacity to contract. The instrument, therefore, did not bind the city, but was, in legal effect, a unilateral offer by the company to buy on the terms prescribed. *Williston on Contracts,* secs. 13, 76. Since the offeror was at liberty to make no offer, it was free to determine and impose whatever terms it might choose, and among these it might require that its offer be accepted within a designated time in a specific manner. If no acceptance is made in the manner and within the period fixed by the offer, the offer necessarily expires. *Williston on Contracts,* secs. 53, 61, 76; *Van Camp Packing Co. v. Smith,* 101 Md. 565, 61 A. 284.

The contract here was not merely for the sale of the land. The offeror was carrying on its business of distiller upon the land in question, and the particular utility of the portions of the three warehouses in the proposed widening of Russell Street was, together with the rest of the buildings, for the storage of its product in barrels. Furthermore, if the municipality should accept its offer to buy, the offeror would be assured of again being the owner of its property, with the

134

improvements, in the same condition as at the time the municipality acquired the strip bordering on Russell Street for the purpose of widening that highway. But, if the municipality would not accept the offer, the offeror would be compelled to renovate the warehouses. Time, therefore, was not a subsidiary stipulation, but was made, and is, in fact, so material that the acceptance by the municipality in the form prescribed, within the period specified, was essential. While in equity time is usually not essential in the sale of land, yet, where expressly made so by the terms of the contract or by special circumstances, it becomes essential. Equity will not lend its aid to enforce specifically the contract regardless of the limitation of time. *Coleman v. Applegarth,* 68 Md. 21, 27, 28, 11 A. 284; *Maughlin v. Perry,* 35 Md. 352, 359; *Stern v. Shapiro,* 138 Md. 615, 626, 114 A. 587; *Tarses v. Miller Fruit & Prod. Co.,* 155 Md. 453, 142 A. 522.

The municipality failed to pass the required ordinances within one year, and the company notified the municipality on September 26th, 1932, that the agreement was void and of no effect, demanded the repayment of the $10,000 paid when the paper writing was signed, and informed the city that it could take possession of the strip of land in question.

It was not until October 20th, 1932, that the ordinance closing that part of Russell Street which was the subject-matter of the paper writing of August 24th, 1931, was passed; and on the same day was enacted another ordinance authorizing the sale of this land in accordance with section 13 of the Baltimore City Charter. The day after these ordinances became effective, the company again demanded the refunding of the $10,000, on the theory that it was not bound; and the municipality replied on October 26th, 1932, insisting that there was a valid contract as of August 24th, 1931, which would be enforced. On November 12th, 1932, the company brought an action at law against the municipality to recover the part payment of $10,000; and on November 29th, 1932, the municipality began the suit in equity

now at bar on this appeal. The bill of complaint was to enforce specifically against the company the terms of the paper writing of August 24th, 1931; to enjoin the company from prosecuting farther the pending action at law, or any other action at law against the municipality; to recover any sum of money claimed to be due under the instrument of August 24th; and, alternately, to take an account of the taxes and of rents for use and occupancy during the period which the company has occupied and used the property in dispute, and decree the amount payable by the company to the said municipality, and, finally, to obtain general relief.

After the parties were at issue, testimony was taken, and the chancellor decreed "that the contract of August 24th, 1931, * * * is not rendered null and void because of the failure of the complainants within one year from the date of said contract to have passed by the City Council the ordinances referred to in said contract, and the Court decrees that said contract is still in full force and effect." The decree then permanently enjoined the company from prosecuting the action at law to recover the $10,000, and decreed that the municipality pay the costs. The company has appealed and so has the city. The latter's sole ground of appeal is the imposition of costs upon the municipality.

For the reasons assigned in the course of this opinion, the decree of the chancellor must be reversed, except with reference to the imposition of costs upon the city. As the municipality will have an opportunity to present any proper defense, whether by way of set-off or otherwise, in the action at law now pending in the Superior Court of Baltimore City between the parties, there does not appear to be any equitable principle involved which would require the bill to be retained for an accounting.

> *Decree reversed, except with respect to costs; and cause remanded for a decree dismissing the bill of complaint, with costs to the American Medicinal Spirits Company in both appeals.*