472 A.2d 104

**PRINCE GEORGE'S COUNTY, Maryland**

v.

**Marc SILVERMAN.**

**No. 682, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

March 8, 1984.

**42**

Ralph E. Grutzmacher, Associate County Atty. for Prince George's County, with whom were Thomas P. Smith, County Atty. for Prince George's County and Michael O. Connaughton, Deputy County Atty. for Prince George's County on the brief, for appellant.

Russell W. Shipley, with whom were Steven R. Smith and Shipley, Curry & Taub, P.A., Landover on the brief, for appellee.

Argued before MOYLAN, LISS and BELL, JJ.

BELL, Judge.

Marc Silverman (Silverman), Appellee, sought a Declaratory Judgment and a Writ of Mandamus to have Prince George's County (County), Appellant, convey the "Marton Tract" to him as the highest qualified bidder. The Circuit Court for Prince George's County ordered that the sale be ratified and that a Writ of Mandamus issue commanding the County Executive of Prince George's County to execute a deed of conveyance to Silverman.

On appeal the County raises three issues for our consideration:

 I. Whether the court erred in holding that the County Council's action regarding Resolution CR–120–1981, which pertained to the "Marton Tract", was illegal and improper.

 II. Whether the court erred in holding that a contract for the sale of the "Marton Tract" existed between the County and Silverman.

 III. Whether the County Executive has the capacity to contract to convey the "Marton Tract" in the absence of approval by the County Council.

## FACTS

In 1980, the Board of Education conveyed the Marton Tract to Prince George's County. The Board of Education had acquired the tract in 1958 from the Marton family. The

tract consists of approximately four acres of land and is part of Lot 7 in the Richard S. Hills Subdivision. The property lies north of Maryland Route 198 near the intersection of Route 198 and Interstate 95.

Since March of 1977, the County has disposed of some 40 to 50 "major surplus properties" (property containing improvements or property valued in excess of $25,000). Although Section 2–111.1 of the Prince George's County Code requires the County Executive to inventory surplus property for approval by the County Council *before* he disposes of it, in all of the 40 to 50 surplus property dispositions, the County Executive first secured a bona fide transferee/purchaser and *thereafter* submitted the matter to the council for approval. In all cases *except* the Marton Tract, the council approved the sale of the surplus property.

The Marton Tract was advertised for sale in January of 1981 as surplus property of the County. Silverman contacted Raymond Austin of the County's Bureau of Property Management in response to the advertisement. He received a "bid package" from that office. Silverman submitted a sealed bid, on a form entitled "Bid and Option to Acquire Real Property", in the amount of $50,000 with a cashier's check for $5,000 payable to the County.

The sealed bids were opened on February 27, 1981, and Silverman qualified to participate in the oral auction. At the auction, Silverman was declared the successful bidder at $71,605. Silverman certified his bid on that same day. The only other competing bidders were Eileen and Wayne Updike, daughter and son-in-law of Clara Marton, at $70,000. On March 11, 1981, the County cashed Silverman's check for $5,000.

During April of 1981, the County Executive prepared the proposed list of surplus property dispositions, designated as Resolution CR–63–1981, and submitted the list to the County Council for approval. The Marton Tract was "deleted" from the list with no explanation.

On August 11, 1981, Austin informed Silverman that his bid for the Marton Tract had been accepted but that because

the period for notification of acceptance of the option by the County had expired, the option was null and void. A tender of a check in return of the deposit accompanied that notification. In response to the letter from Austin, Silverman met with County officials in an attempt to ascertain the problem.

On August 28, 1981, the County informed Silverman that the County Executive intended to resubmit the Marton Tract for approval as surplus property as Resolution CR–120–1981. When the council first considered CR–120–1981 on October 13, 1981, it voted 6 to 5 in favor of approval; then one councilman changed his vote to defeat the resolution 6 to 5. Following that action the council approved, by a vote of 6 to 5, a motion to table consideration of the resolution indefinitely. At no point during their consideration did the council make any reference to whether the subject property was needed for a public purpose. The transcript of the council proceedings indicated that some council members felt the prior owners, the Martons, had been unfairly forced to sell their land.

At the time CR–120–1981 was under consideration by the County Council, legislation was pending which would have amended the provision in the Code regarding the prior owners rights to reacquire surplus property. On October 13, 1981, when the council considered the sale of the Marton Tract, the Code provided:

Notwithstanding the foregoing provisions of this subsection (d), a person from whom property was acquired by the County, or the person's successor in interest, shall have first right over municipality, any government entity or agency other than Prince George's County, or any other person to reacquire the property (or such portion of it which is declared surplus) if all the following conditions are met:

. . . . .

(3) The determination of the County Executive that the property is surplus occurs within *ten (10)* years after County acquisition. (Emphasis added).

Prince George's County Code
Section 2–111.1(d).

The pending legislation would have changed the period during which the prior owners had a right to reacquire the property from 10 to 15, 25, or 40 years. (Note—Section 2–111.1 was in fact amended on June 23, 1982 to extend the period to 25 years.)

When Silverman filed the instant action to enforce his option to purchase the Marton Tract, Clara Marton intervened. The court found Clara Marton would be entitled to reacquire the property only if the following two conditions were met: (1) The Council's action on CR–120–1981 was legal and proper, and (2) Amended Section 2–111.1 applied to this case. After a thorough and well reasoned discussion, the court found:

the County Executive's determination that the Marton Tract is no longer needed for a public purpose was correct, there being no evidence to the contrary; that the Council's failure to approve—the "Marton Tract" as surplus was motivated by legally unauthorized considerations, i.e., prolonging a sale of county property until a Code Amendment could be enacted that would enure to the benefit of a special interest; that the purchaser [Silverman] met all the procedural requirements made known to him by the County; and that Petitioner, Marc Silverman, should be granted the relief he seeks in these proceedings for the reasons herein set forth.

The court further found that under the law in effect at the time the matter was before the County Council, Clara Marton had no right of reacquisition because the 10 year period had expired.

I. *Whether the Council's action regarding the Marton Tract was illegal and improper.*

The lower court found that the council's sole function in considering CR–120–1981 was to determine whether the

Marton Tract was needed for a public purpose. Since the council indefinitely tabled the resolution to allow .Section 2–111.1 to be amended so that a prior owner could reacquire the property, the court held the council acted improperly and arbitrarily.

The County contends that based on the applicable statutory provisions, which require the council to approve the Executive's determinations, the trial court invaded the province of the County Council in determining that it considered impermissible factors. The County cites *County Council for Montgomery County v. District Land Corp.,* 274 Md. 691, 337 A.2d 712 (1975) in support, which holds that the motives, wisdom or propriety of a municipal governing body in passing an ordinance are not subject to judicial inquiry.

Our discussion of this issue is addressed in two parts: (A) whether the court had authority to address the matter; (B) whether the court erred in finding the council's action improper.

### A.

The standard of review by the circuit court when the County Council or another administrative body is acting in a quasi-judicial or administrative capacity is whether the action was arbitrary, capricious, or discriminatory. *County Council v. Carl M. Freeman Assoc.,* 281 Md. 70, 74, 376 A.2d 860 (1977); *See also; Montgomery County v. Woodward and Lothrop,* 280 Md. 686, 706, 376 A.2d 483 (1977); *Stratakis v. Beauchamp,* 268 Md. 643, 652, 304 A.2d 244 (1973). The test to determine whether action is legislative or administrative is whether the action is one making new law, i.e. an enactment of general application prescribing a new plan or policy, or is one which merely looks to or facilitates the administration, execution or implementation of a law already in force. *City of Bowie v. County Comm'r for Prince George's County,* 258 Md. 454, 463, 267 A.2d 172 (1970).

In considering CR–120–1981 on October 13, 1981, the council was not functioning in a purely legislative capacity.

Rather, it operated in a quasi-judicial or administrative capacity. The council dealt with the disposition of one isolated parcel of property. The effect of its decision was restricted to the individuals who had an interest in the property and had no effect on the general safety or welfare. The council essentially adjudicated Silverman's rights in the property. Thus the trial court did not invade the province of the council because it did not attack the validity of a legislative enactment; rather it simply determined whether the council's action on Resolution CR–120–1981, pursuant to a *prior* legislative enactment (Section 2–111.1 of P.G.Co. Code), was arbitrary and discriminatory.

The County's reliance on *District Land Corp., supra,* for the proposition that the court invaded the legislative province of the council is misplaced. The Court of Appeals held in that case that a comprehensive rezoning plan bearing a substantial relationship to the public health and welfare enjoys a strong presumption of validity, and that the motives, wisdom, or propriety of a municipal body in passing the ordinance effectuating the comprehensive rezoning are not subject to judicial inquiry. The adoption of a sectional zoning map in that case, was deemed a "legislative" act because it concerned legislative facts, e.g. zoning of a large area and impact on general welfare of the county. In the case at bar, however, the consideration of the Marton Tract involved the council in a quasi-judicial capacity.

### B.

The trial court did not err in holding that the council's failure to approve CR–120–1981 was improper and arbitrary.

The initial question we must address, for purposes of the instant case, is within which branch of the government does the power to dispose of surplus property lie.

*Executive Branch*

Article XI–A of the Maryland Constitution (Home Rule Amendment) sets forth the steps to be taken at the local level to establish a charter local government. Section 1 of

Article XI–A the Home Rule Amendment authorizes the counties to choose a charter form of government, which if adopted by the voters of the county, becomes the law or "constitution" of the county. Section 2 mandates the adoption by the Maryland General Assembly of a grant of express powers for those counties choosing a charter form of government. Pursuant to the mandate, the General Assembly enacted the "Express Powers Act", codified in Article 25A of the Annotated Code of Maryland. Article 25A, Section 5(B) of the Maryland Code permits the disposition by the County of "any real or leasehold property belonging to the County, provided the same is no longer needed for public use."

The Prince George's County Charter, Article IV, Section 402 enumerates the specific powers of the executive branch of the county government. It provides that all those specific powers vested in Prince George's County by the Constitution shall be vested in the County Executive. Among the enumerated powers is the power to "sign or cause to be signed on the county's behalf all deeds, contracts, and other instruments ..." Prince George's County Charter, Article IV, Section 402(8).

Prince George's County Code, Subtitle Two, Division 2, Section 2–111.1 sets forth a framework for the declaration of county owned property as surplus and the disposal of the property. It provides in pertinent part:

The County Executive shall be authorized to sell, lease or otherwise dispose of any County owned real property, no longer needed for public use or in furtherance of the public purpose, in accordance with the following provisions:

(a) The County Executive shall establish an inventory of all real property and improvements titled in the name of Prince George's County ...

(b) The County Executive, at least once annually, shall review the inventory of all real property and improvements held in fee by Prince George's County and shall

transmit, for the approval by resolution of the County Council, a list of all properties to be leased, offered for sale, or otherwise disposed of. . . .

■ Pursuant to the above, we agree with the trial court that the County Executive was empowered to dispose of county owned surplus property in accordance with the requirements of Section 2–111.1.

*Legislative Branch*

■ Subsection (S) of the Express Powers Act, Article 25A, of the Maryland Code provides:

The foregoing or other enumeration of powers in this article shall not be held to limit the power of the county council, in addition thereto, to pass all ordinances, resolutions, or by-laws, not inconsistent with the provisions of this article or the laws of the State, as may be proper in executing and enforcing any of the powers enumerated in this section . . . as may be deemed expedient in maintaining the peace, good government, health and welfare of the county.

This section contains a general grant of power to pass laws for the peace, good government, health and welfare of the County. Pursuant to this grant of power, measures may be passed which are necessary and beneficial, and will be adjudged valid by the courts, provided they are reasonable and consistent with the laws and policy of the State. *Montgomery Citizens League v. Greenhalgh,* 253 Md. 151, 161, 252 A.2d 242 (1969). Thus where council legislation bears a reasonable relationship to the implementation of an enumerated power, the legislation will be upheld.

■ Applying the above analysis to the County Code we agree with the trial court that:

(1) The requirement that the County Executive annually inventory all County owned property no longer needed for a public purpose is necessary for the Council to be apprised of the County's surplus land holdings and proper to return to the tax rolls or other governmental agencies; and

(2) The provision requiring Council approval that properties are in fact surplus is likewise a necessary and proper exercise of legislative checks and balances on the executive determination to dispose of County property: To hold otherwise could result in the County Executive's declaration that all the county-owned property is surplus.

The problem in this case, however, is not whether Section 2–111.1 is valid, but whether Section 2–111.1 was properly followed. Section 2–111.1 sets forth the procedure for disposing of surplus property. It is designed to insure fairness and to prevent arbitrary and discriminatory dispositions. It is important to note that the code requires council approval only of the County Executive's determination that the property is surplus; not approval of the prospective grantee.

■ Prince George's County has been disposing of its surplus property in contravention of the code. Despite the code's requirement of obtaining approval before a grantee has been selected, the County has condoned the Executive's procurement of the grantee first. In the 40 to 50 surplus property cases, the property was advertised as surplusage in newspapers, sealed bids were accepted, oral auctions were held and bona fide deposits were cashed prior to council approval by resolution. The reason for ignoring the specifics of Section 2–111.1 was obviously to enable the council to know the identity of the grantee and his proposed use of the property. This procedure contravenes the legislative intent of Section 2–111.1 which is to prevent discrimination and arbitrary action.

Pursuant to the code, the council's sole duty was to consider factors directly related to whether the property was no longer needed for public use. It was not authorized to table the matter until a code amendment could be enacted that would enable the Marton family to repurchase the property. In its answers to Interrogatories propounded by Silverman, the County admitted that the property was in fact surplus property. Since it is undisputed that the property was surplus, it is clear that the council acted arbitrarily in failing to approve CR–120–1981. The court did not err.

## II. *Whether a contract for sale of the "Marton Tract" existed.*

By ratifying the sale of the Marton Tract, the trial court implicitly found that a contract existed between Silverman and the County. Prince George's County contends that there never was a contract between the two parties because the County never accepted the Bid and Option Agreement submitted by Silverman. The County asserts that the option became null and void by the terms of the agreement itself when the 45 day period for acceptance set forth in paragraph IIB of the agreement expired. The County cites *American Medicinal Spirits Company v. Mayor and City Council of Baltimore,* 165 Md. 128, 166 A. 407 (1933) in support, which states at p. 133, 166 A. 407:

> Since the offeror was at liberty to make no offer, it was free to determine and impose whatever terms it might choose, and among these it might require that its offer be accepted within a designated time and in a specific manner. If no acceptance is made in the manner and within the period fixed by the offer, the offer necessarily expires. *Williston v. Contracts,* Sections 53, 61, 76.

The County further urges that the 45 day provision amounted to a right to terminate the contract, and in the absence of fraud, undue influence, or mistake, such a reservation is valid and enforceable. *Acme Markets, Inc. v. Dawson Enterprises, Inc.,* 253 Md. 76, 251 A.2d 839 (1969); *Kahn v. Janowski,* 191 Md. 279, 60 A.2d 519 (1948).

At the outset we note that although the facts of *American Medicinal Spirits, supra,* appear similar to those of this case, we find the reliance by the County thereon misplaced. In *American Medicinal Spirits,* a company contracted to purchase land from the city conditioned on the city passing an ordinance within one year. The city failed to pass the ordinance within the specified period. The Court held the contract amounted to a unilateral offer to purchase by the company and that one term of the offer was not met. Therefore, the purchaser/company could opt to declare the

contract null and void. The rationale behind this holding was obviously to prevent the city from procrastinating and to assure the company that an effort would be made to fulfill the terms of the contract in a timely manner. The Court did not address the issue before us—whether the city/seller (or in this case the County) could purposefully avoid passing the ordinance and then declare the contract null and void.

Silverman posits that the County did in fact approve his bid by negotiating his check of $5,000; by acknowledging in an informal memorandum that the bid for the property was ratified and by Austin's letter of August 11, 1981, stating the County accepted his bid. Additionally, Silverman asserts that he had the sole right to exercise the option; therefore it was not even necessary for the County to accept. As to the allegations concerning the 45 day provision in the agreement, Silverman contends the provision was an illegal and unenforceable provision.

Before we address the parties' contentions, we must determine exactly what the agreement entitled "Bid and Option to Acquire Real Property" represents.

An option to purchase property is a continuing offer to sell by the optionor which is irrevocable during the stated period. *Beall v. Beall,* 291 Md. 224, 434 A.2d 1015 (1981). An option is not a mere offer to sell, but is a binding agreement if supported by consideration. *Blondell v. Turover,* 195 Md. 251, 72 A.2d 697 (1949). The optionee has what is termed a power of acceptance, and when he accepts the offer in the prescribed manner, the option is exercised and a binding bilateral contract of sale is created. *Straley v. Osborne,* 262 Md. 514, 278 A.2d 64 (1971).

Paragraph IIB of the agreement between Silverman and the County provides:

within 45 days after Optionee has been notified that his bid was accepted, Optioner shall notify Optionee in writing that his Option was accepted. If notice is not given to Optionee within the allotted time, this Option shall become null and void.

This provision implies that the County retains the power to revoke its "offer" and thereby prevent the formation of a binding contract. Since by definition, an option cannot be revoked, this agreement, despite its title, cannot be deemed an option contract. Accordingly, we must analyze the parties' positions under general contract principles.

A contract is formed when an unrevoked offer made by one person is accepted by another. An "offer" is the "manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." 1 Restatement Contracts (2d) § 24 (1979). A manifestation of willingness to enter into a bargain is not an offer if the person to whom it is addressed knows that the person making it does not intend to conclude a bargain until he has made a further manifestation of consent. *Foster & Kleiser v. Baltimore County, Md.,* 57 Md.App. 531, 470 A.2d 1322 (1983) citing 1 Restatement Contracts (2d) § 26 (1979). By the same token, an invitation to bid is not an offer, but the bid or tender is an offer which creates no right until accepted. *Rofra, Inc. v. Board of Education,* 28 Md.App. 538, 346 A.2d 458 (1978). Acceptance of an offer can be accomplished by acts as well as words; no formal acceptance is required. *Porter v. General Boiler Casing Co.,* 284 Md. 402, 409, 396 A.2d 1090 (1979); *Duplex Envelope Co. v. Baltimore Post Co.,* 163 Md. 596, 605, 163 A. 688 (1933).

Judge Adkins, writing for this Court in *Foster & Kleiser, supra,* espoused the principle that a provision in a contract requiring council approval amounts to a condition of acceptance; and therefore, there can be no binding contract until such approval is forthcoming. In addition, the requisite approval must comply with the applicable laws. In that case, Foster & Kleiser leased a tract of land in Baltimore County owned by County Mutual Acceptance Corp. The lease was terminable upon 60 days prior written notice from either party. Baltimore County offered to purchase the property. The agreement between Baltimore County and County Mutual stated:

> In the event that this Agreement is not approved by the Baltimore County Council, this Agreement shall become null and void . . .

County Mutual terminated Foster & Kleiser's lease, and the contract of sale was approved by the County Council. Foster & Kleiser brought suit, alleging among other things, that the submission of the contract of sale by Baltimore County to County Mutual was an offer to purchase the land; that the offer was accepted when County Mutual executed the contract; and that there was a binding contract subject to approval of the County Council. We held at p. 538 of 57 Md.App., 470 A.2d 1322:

> there could be no binding or enforceable contract until approval by the County Council had occurred. Therefore, what Foster & Kleiser claims was an offer submitted to County Mutual by Baltimore County was not an offer, but merely part of preliminary negotiations. County Mutual could not have accepted this "offer" without further action by the County, that *action being approval by the County Council, as required by the County Charter.* (Emphasis supplied).

The Baltimore County Charter § 715 stated in pertinent part:

> . . . Any contract . . . must be approved by the County Council before it is executed if the contract is
>
> (1) For the purpose of real or leasehold property where the purchase price of the property is in excess of $5,000. . . Balto.Co.Code 1978 (1982 Cum.Supp.)

 Applying the above principles to the sequence of events in this case, we hold that a binding contract did exist between Silverman and the County. The advertisement for sale of the Marton Tract by the County did not constitute an offer. *Rofra, Inc., supra.* Rather, Silverman's bid, initially at $50,000 and finally at $71,605, constituted his offer to purchase the property. There is no Statute of Frauds problem because Silverman certified his bid in writing on the same day. The County accepted Silverman's offer when

it declared Silverman the successful bidder. The negotiation of Silverman's $5,000 check by the County, on March 11, further confirmed its acceptance.

By the terms of the agreement, however, this acceptance was conditioned on "notice [being] given to the Optionee within 45 days." This provision enabled the council to approve or disapprove the sale. Had this provision stated that the entire agreement required approval by the council and the applicable statute reinforced such a requirement, as in *Foster & Kleiser,* we would have to hold that a binding bilateral contract was not formed for lack of acceptance. In this case, however, the applicable statute, Section 2–111.1 of the Prince George's County Code, mandated that the Council only approve the determination that the property was surplus, and no more. If the council had in fact determined that the property was needed for a public purpose, the County could then declare the agreement void. As we discussed in Issue I, *supra,* however, the council conceded that the property was surplus. Therefore, the condition in the contract requiring council approval was fulfilled and the County is deemed to have accepted Silverman's offer.

Moreover, the County's subsequent action in this case constituted a waiver of its right to invoke the 45 day provision. The right to rescind may be waived by "continuing to treat the contract as a subsisting obligation." *Michael v. Towers,* 253 Md. 114, 117, 251 A.2d 878 (1969), quoting *Kemp v. Weber,* 180 Md. 362, 24 A.2d 779 (1942). "If a party . . . does any act which recognizes the continued validity of the contract or indicates that he still feels bound under it, he will be held to have waived his right to rescind." *Lazorcak v. Feuerstein,* 273 Md. 69, 76, 327 A.2d 477–481 (1974). *See also, Bagel Enterprises, Inc. v. Baskin and Sears,* 56 Md.App. 184, 467 A.2d 533 (1983). The Court of Appeals in *Coopersmith v. Isherwood,* 219 Md. 455, 150 A.2d 243 (1963) elaborated on this principle, stating at p. 462, 150 A.2d 243:

A right to rescind, abrogate, or cancel a contract must be exercised promptly on discovery of the facts from which it

arises; it may be waived by continuing to treat the contract as a subsisting obligation. The general rule is that the right to rescind must be exercised within a reasonable time, although there is authority to the effect that the mere question of how much time a party to a contract has permitted to elapse is not necessarily determinative of the right to rescind, the important consideration being whether the period has been long enough to result in prejudice to the other party.

In this case, the County continued to treat its agreement with Silverman as a subsisting obligation by reconsidering the Marton Tract under Resolution CR–120–1981 in October of 1981, long after the 45 days expired. Furthermore, the council's act of "deleting" the Marton Tract from the first resolution, and its act of indefinitely tabling the second resolution certainly amounted to prejudice to Silverman. In light of the above, the County is estopped from invoking a defense based on the 45 day provision.

III. *Whether the County Executive has the capacity to contract to convey the "Marton Tract" without approval by the County Council.*

The County contends the Executive lacked the capacity to sell the "Marton Tract" to Silverman. Silverman asserts that this issue was not preserved for our review. Md.Rule 1085.

■ Although this issue was not directly raised below, the court indirectly addressed this issue when it considered what powers the Legislature and Executive have pursuant to Section 2–111.1. Therefore, we do not dismiss by virtue of Rule 1085. Silverman also argues that the county is estopped from raising this issue.

■ To apply estoppel, the party claiming the benefit of estoppel must have been misled to his detriment and must have changed his position for the worse, having believed and relied upon the representations of the party sought to be estopped. *Dorsey v. Beads,* 288 Md. 161, 171, 416 A.2d 739 (1980); *Neuman v. Travelers Indemnity Co.,* 271 Md. 636, 654, 319 A.2d 522 (1974); *Lusby v. First National Bank,* 263

Md. 492, 505, 283 A.2d 570 (1971); *Savonis v. Burke,* 241 Md. 316, 319, 216 A.2d 521 (1966). This Court in *Zimmerman v. Summers,* 24 Md.App. 100, 330 A.2d 722 (1975) elaborated on the principle stating at p. 123, 330 A.2d 722:

> [T]he rule now to be followed in Maryland however is that equitable estoppel may be applied not only when the conduct of the party to be estopped has been wrongful or unconscientious, and relied upon by the other party to his detriment, *but also when the conduct, apart from it morality, has the effect of rendering it inequitable and unconscionable to allow the rights or claims to be asserted or enforced.* (Emphasis added).

■ The practice of the County Council prior to its consideration of CR–120–1981 and subsequent thereto has been to have the County Executive enter into a contract with the prospective purchaser of surplus property before submitting the matter to the council for its approval. The County cannot now deny the validity of the procedures it created for its own benefit. Silverman relied on representations that the Executive had the capacity to contract. It certainly would be "inequitable and unconscionable" to allow the County now to assert this defense.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.