*Todd A. Pattison v. Deborah Pattison*, No. 33, September Term, 2024. Opinion by Gould, J.

**DIVORCE – PROPERTY SETTLEMENT AGREEMENTS**

The Supreme Court of Maryland recognized that in divorce proceedings, a court analyzing whether a property settlement agreement exists utilizes the same principles that it uses for other contracts. Mutual assent is a prerequisite for a finding that such an agreement exists.

**DIVORCE – PROPERTY SETTLEMENT – OFFER**

The Supreme Court of Maryland determined that an offer must be interpreted based upon a reasonable person standard.

**DIVORCE – PROPERTY SETTLEMENT – OFFER – CONDITIONS FOR ACCEPTANCE**

The Supreme Court of Maryland held that a condition attendant to an offer does not need to be communicated within the four corners of the agreement.

**DIVORCE – CONTRACTS – WITHDRAWAL OF AN OFFER**

The Supreme Court of Maryland determined that an offer can generally be withdrawn by the offeror and that withdrawal can be communicated in writing. If the offeree attempts to accept the offer after it has been withdrawn or has expired, the offer becomes a counteroffer, putting the power of acceptance in the hands of the original offeror.

**DIVORCE – CONTRACTS – ACCEPTANCE**

The Supreme Court of Maryland held that unless the parties so specify or indicate by prior performance, silence does not constitute acceptance of an offer.

**DIVORCE – CONTRACTS – ACCEPTANCE**

The Supreme Court of Maryland held that there is no duty to respond to a counteroffer.

IN THE SUPREME COURT

OF MARYLAND

No. 33

September Term, 2024

_____

TODD A. PATTISON

v.

DEBORAH PATTISON

_____

Fader, C.J.,
Watts,
Booth,
Biran,
Gould,
Eaves,
Killough,

JJ.

_____

Opinion by Gould, J.
Eaves and Killough, JJ., dissent.

_____

Filed: July 23, 2025

The issue here is whether a wife's settlement offer in a divorce case was timely accepted by her husband. The circuit court found that it was timely accepted and that a binding settlement agreement was formed. Over the wife's objection, the court entered a judgment for absolute divorce based on mutual consent. The court incorporated (but did not merge) the settlement agreement into the judgment. The Appellate Court of Maryland disagreed and reversed the judgment of the circuit court. We affirm the judgment of the Appellate Court.

**I**

**A**

This contested divorce case was commenced by Petitioner Todd Pattison ("Husband") on May 24, 2019, when he filed a complaint for an absolute divorce against Respondent Deborah Pattison ("Wife"), who filed a counterclaim the following month. The parties alleged various grounds for divorce, none of which are relevant here.

Trial was scheduled to begin on October 5, 2020. On September 16, 2020, over Wife's objection, the court postponed the trial until March 2021. Two days later, the parties attended a pretrial/settlement conference at which they spent approximately seven hours in mediation with a retired judge. No settlement was reached.

On Friday, September 25, 2020, Wife's counsel sent a hand-delivered settlement package to Husband's counsel containing a Voluntary Separation and Property Settlement Agreement (the "Agreement"), bearing Wife's signature. Among other terms, the Agreement provided that, "[i]n order to balance the equities of the parties in and to their properties, Husband shall pay to Wife a monetary award . . . in the amount of $760,000.00

to be paid" in six installments over two and one-half years. To secure this obligation, the Agreement required Husband to execute a promissory note (the "Note"), attached as Exhibit A to the Agreement. The Agreement also stated that Husband's business and living trust "shall guarantee payment of this monetary award obligation." Accordingly, an unconditional guaranty (the "Guaranty") was included in the settlement package.

The cover letter with the proposed Agreement stated:

> Enclosed please find two (2) signed, initialed and notarized originals of the Pattison Marital Settlement Agreement for counter-execution by your client. A redlined copy of the pages of the Agreement depicting my revisions to the version which you sent to me yesterday is also attached; note that non-substantive changes were also made at pages 5, 6 and 8 in addition to the "repairs" language on pages 3-4. Further note that changes to page 8 were made in order to reflect the fact that there is a Note to be paid according to its terms and that the Guarantors will not be signing the Note itself.

> Also enclosed is the final version of the Promissory Note (Ex. A) and the form of the Guaranty which has been approved by [Wife].

> This Agreement is delivered to you in settlement of the parties' outstanding disputes *on condition* that the Agreement and Note be executed by [Husband] today. I will assume that we will have the final Guaranty signed by [Husband] by close of business on Monday.

> Please advise me via text or e-mail when [Husband] has counter-executed the Agreement and Note. Thank you.

Husband received the settlement package by email that same day, but signed the documents the following Monday, September 28, 2020.

On September 29, 2020, Husband filed an amended complaint seeking an absolute divorce based on mutual consent. *See* MD. CODE ANN., FAM. LAW ("FL") § 7-103(a)(3) (2019 Repl. Vol.). Among other things, Husband alleged that he and Wife entered into the

2

Agreement. He requested that the court incorporate but not merge the Agreement into a judgment of absolute divorce.

Wife timely answered the amended complaint on October 12, 2020, alleging that Husband failed to timely accept her settlement offer and that, therefore, the Agreement was a nullity.

Husband moved to enforce the settlement agreement on October 16, 2020. The court held an evidentiary hearing on March 16, 2021. Husband and Wife both testified. The circuit court granted Husband's motion. The court recognized that settlement agreements are contracts, and that mutual assent is an "essential prerequisite to the creation or formation of a contract." The court then analyzed the language of the Agreement and concluded that its plain terms were definite and reflected the parties' intent to be bound.

The court rejected Wife's argument that her offer was conditioned on Husband signing the Agreement on September 25, 2020. The court acknowledged that the cover letter contained language "indicating" a condition that Husband needed to sign the Agreement on September 25, 2020, but that Husband "denie[d]" that the letter imposed a "hard deadline, and point[ed] to language" in the letter "indicating an expectation that the agreement would be finalized by the following week." The court weighed the credibility of the witnesses and concluded that Wife's offer did *not* include "a definite time expiration of September 25th, 2020." The court stated that even if it did, "contract formation still would have occurred through the action of the parties." The court did not explain the factual basis for that finding, but instead proceeded to find that even if Wife had imposed a hard deadline, she waived it.

3

To that end, the court stated that "the evidence presented at the hearing indicated that counsel was in communication throughout the day and the parties were being updated by their respective counsel." The court reasoned:

At some point on the 25th [Husband] indicated through counsel that he would not be able to sign the agreement until Monday.

There is no evidence presented to indicate that [Wife] rejected [Husband]'s offer to sign the agreement on Monday, the 28th, rather than Friday. In fact, the evidence indicates a willingness to accept the separation [agreement] from [Husband] on Monday.

As a result, [Husband] signed and returned the separation agreement on September 28th, 2020.

Importantly, the first time the issue of untimeliness was raised by [Wife] was when she filed her answer to the amended complaint 17 days later. [Wife]'s failure to raise the issue until 17 days after [Husband] accepted her offer constitutes a waiver of the requirement to sign the separation agreement on the 25th.

Citing section 5:5 of *Williston on Contracts*,[1] the court stated:

an offeror who has imposed a time limit in its offer does not in fact insist upon it, and by further negotiations the offeror may indicate a continued willingness to stand by the terms of its offer. Any such manifestation of continued willingness on the part of the offeror will extend the time during which acceptance may occur, constituting in effect a new offer which may be accepted, and if so accepted, will ripen into a contract.

*See* 1 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 5:5 (4th ed.).

From there, the court determined that it was "not persuaded that [Wife] was unwilling to extend the time during which acceptance [could] occur after learning that

---

[1] The circuit court cited to section 5:5 of *Williston on Contracts*, "Lapse by expiration of time stated in offer." In the May 2025 updated version of *Williston on Contracts*, that passage is found in section 5:7.

[Husband] was unable to perform" on September 25. Thus, the court found "that mutual consent of the parties to form a contract, namely the [Agreement], ha[d] occurred."

**B**

Wife noted an appeal. The Appellate Court of Maryland dismissed her appeal because no final judgment had been entered. *Pattison v. Pattison*, 254 Md. App. 294 (2022).

On remand, the court granted Husband an absolute divorce by mutual consent and incorporated but did not merge the Agreement into the divorce decree.

Wife appealed again, and in a reported opinion, the Appellate Court reversed. *Pattison v. Pattison*, 262 Md. App. 504 (2024). The court found that no contract was formed because Husband failed to execute the Agreement by the end of the day on September 25, 2020, as required by Wife's explicitly stated condition. *Id.* at 529, 534-35. The court also found no evidence supporting the circuit court's conclusion that Wife had waived this condition. *Id.* at 534.

We granted Husband's petition for a writ of certiorari. *Pattison v. Pattison*, 489 Md. 243 (2024).

**II**

**A**

Husband contends that the parties entered into a valid and enforceable settlement agreement because Wife signed the document on September 25, 2020, and he signed it on September 28, 2020. He argues that Wife accepted the terms of the Agreement through her signature, and that her condition for same-day execution was not part of the Agreement but

5

was rather an extrinsic attempt to change its terms. To that end, Husband argues that the integration clause in the Agreement—which states that the document contains the entire understanding of the parties—precludes consideration of the condition in the cover letter.

To support his position, Husband points to his testimony at the hearing that he did not interpret the cover letter as imposing a hard deadline of September 25. Husband testified: "My interpretation was [Wife's counsel] needed all the executed documents by Monday, because without the personal guarant[y] and the promissory note the settlement agreement is unenforceable."

Husband argues that even if the cover letter imposed an acceptance deadline, it was an unreasonable condition. According to Husband, that's because the parties' attorneys communicated on the morning of September 25, and Wife's counsel knew that nobody would be at Husband's counsel's office to accept delivery of the settlement package. He argues that the email with the settlement package was not received by his counsel until 3:51 p.m., "just over an hour from the close of the business day." Husband contends that he did not receive the *original* package until September 28. Relying on *Canaras v. Lift Truck Services, Inc.*, 272 Md. 337 (1974), Husband argues that "[w]hether a provision in a contract is a condition the nonfulfillment of which excuses performance depends upon the intent of the parties to be ascertained from a fair and reasonable construction of the language used in light of all the surrounding circumstance[s] when they executed the contract."

Husband also relies on section 41 of the Restatement (Second) of Contracts for the proposition that whether an offer is accepted within a reasonable amount of time "*is a*

6

*question of fact*[,] *depending on all the circumstances existing when the offer and attempted acceptance are made.*" And he argues that he "acted as quickly and as reasonably under the facts and circumstances of this case as he could" to fully execute the settlement documents.

Finally, Husband contends that even if Wife imposed a September 25 deadline for acceptance, she waived it. According to Husband, Wife never communicated her rejection of the Agreement until she responded to his motion to enforce the Agreement. And, he maintains, the circuit court determined that Wife knew Husband could not sign the documents until Monday and that Husband's counsel was not in his office to accept their delivery. Thus, he argues, the circuit court properly exercised its discretion in finding that Wife "waived strict compliance with her attempted condition[.]"

**B**

Property settlement agreements are analyzed under the same principles as other contracts. *Bruce v. Dyer*, 309 Md. 421, 439 (1987).[2] Mutual assent is a prerequisite to the

---

[2] In a divorce proceeding, one of the benefits of entering into a property settlement agreement is that it provides a basis to obtain a divorce on an expedited basis based on mutual consent. But to do that, the parties must put their agreement in writing and submit it to the court, which in turn must make a finding that the best interests of the parties' minor children, if any, are served by the agreement. FL § 7-103(a)(3). There is no dispute that Husband and Wife intended to put in writing any agreement they reached so that they could proceed with a divorce on that basis. This is important because the dissent seems to think that because Wife and Husband, through their counsel, negotiated and agreed upon the various terms of the Agreement in the days and hours leading up to Wife signing the Agreement, there was no going back—that those terms were final and binding before either party even signed the Agreement. To the contrary, it is clear from the testimony that neither party intended to be bound until the Agreement was finalized and signed, and neither party argued to the contrary in this Court.

7

formation of a contract, which means that the contract terms are definite and that the parties intend to be bound by them. *Cochran v. Norkunas*, 398 Md. 1, 14 (2007). And "the acceptance of the other party must correspond with the offer in its entirety." *Peoples Drug Stores v. Fenton Realty Corp.*, 191 Md. 489, 494 (1948). Here, neither party contends that the proposed Agreement's terms were not certain or definite. And both parties agree that Wife was the offeror. The sole issue is whether there was an offer and acceptance, without which there can be no mutual assent.

An offer can come with or without conditions. As this Court stated 92 years ago:

> Since the offeror was at liberty to make no offer, it was free to determine and impose whatever terms it might choose, and among these it might require that its offer be accepted within a designated time in a specific manner. If no acceptance is made in the manner and within the period fixed by the offer, the offer necessarily expires. *Williston on Contracts*, secs. 53, 61, 76; *Van Camp Packing Co. v. Smith*, 101 Md. 565, 61 A. 284.

*Am. Med. Spirits Co. v. Mayor & City Council of Balt.*, 165 Md. 128, 133 (1933). This time-tested rule makes sense: Contracts are voluntary undertakings; thus, it's not the court's place to pass judgment on the wisdom, necessity, or fairness of the conditions an offeror attaches to her offer. Perhaps Wife had her reasons; perhaps not. Legally, it doesn't matter.

Nor does it matter what Husband *thought* the cover letter meant. An offer is interpreted based on "what a reasonable person in the position of the parties would have thought it meant." *Ray v. Eurice & Bros., Inc.*, 201 Md. 115, 127 (1952) (quoting 1 Samuel Williston & George J. Thompson, *A Treatise on the Law of Contracts* § 94 (2d ed.)). As we explained 73 years ago:

8

*Williston* . . . states the rule as follows: "The only intent of the parties to a contract which is essential[] is an intent to say the words and do the acts which constitute their manifestation[s] of assent."

*Id.* at 127 (quoting 1 Williston & Thompson, *A Treatise on the Law of Contracts* § 21).[3]

Here, there was no ambiguity in the September 25 signature deadline; thus, its interpretation is a matter of law that we review without deference. *See Adventist Healthcare, Inc. v. Behram*, 488 Md. 410, 432 (2024) ("The interpretation of a contract, including the determination of whether a contract is ambiguous, is a question of law reviewed without deference."). Whether the letter imposed a hard signature deadline does not hinge on the credibility of the parties' respective testimony. What matters is what the cover letter said and the legal effect of its words.

The cover letter stated:

This Agreement is delivered to you in settlement of the parties' outstanding disputes *on condition* that the Agreement and Note be executed by [Husband] <u>today</u>. I will assume that we will have the final Guaranty signed by [Husband] by close of business on Monday.

Please advise me via text or e-mail when [Husband] has counter-executed the Agreement and Note. Thank you.

Although the letter was not admitted into evidence, the contents of the entire first paragraph above were elicited verbatim and confirmed by both Husband and Wife in their testimony. The letter expressly distinguishes between the Agreement and Note, which had to be signed on September 25, and the Guaranty, which could be signed on September 28. Thus, any reasonable person in the parties' positions would understand that Wife's offer

---

[3] See footnote 4 for an explanation of the legal effect of the words used to express an offer.

9

was conditioned on Husband signing the Agreement and Note on September 25. Conversely, no reasonable person would perceive any flexibility in that deadline.

## C

That Wife imposed the condition in the cover letter and not within the four corners of the Agreement is also irrelevant. "It is hornbook law that an offer of no specified duration must be accepted within a time reasonable under the circumstances or the offer will lapse and a subsequent attempt to accept will be of no effect." *Barnes v. Euster*, 240 Md. 603, 607 (1965). It is equally true that "an offer that has been extended, but not yet accepted, generally can be withdrawn by the offeror." *Hall v. Prince George's Cnty. Democratic Cent. Comm.*, 431 Md. 108, 131 (2013); *see also Lemlich v. Bd. of Trs. of Harford Cmty. Coll.*, 282 Md. 495, 502 (1978) ("It is so basic a contract principle that minimal supporting authority is needed to authorize the statement that there must exist an offer by one party and an unconditional acceptance of that precise offer by the other, prior to withdrawal by the offeror, before a binding agreement is born."); *Coleman v. Applegarth*, 68 Md. 21, 29 (1887).

The withdrawal of a condition can be communicated in various ways, including through written communication. *See Pavel Enters., Inc. v. A.S. Johnson Co., Inc.*, 342 Md. 143, 163 (1996) (finding that the offer was withdrawn by the offeror by a letter to the offeree expressing an intent to withdraw); *James L. Kernan Co. v. Cook*, 162 Md. 137, 143 (1932) (finding that an offer had been revoked via a letter from the offeror). Obviously, no matter how the offeror communicates a withdrawal, one thing is certain: a withdrawal would never be contained in the proposed contract; that is, an offeror cannot

10

simultaneously extend and withdraw an offer. So even if Wife had not imposed *any* condition in her cover letter, and so long as Husband had not already accepted it, she could have withdrawn the offer in a separate letter at 12:01 a.m. on Saturday, September 26, or at any other time of her choosing. The only difference here is that Wife communicated the expiration of the offer in advance, when she conveyed the offer. Basic logic dictates that if the withdrawal of an offer can be (and always is) communicated outside of the proposed contract *after* the offer is made, so too can a deadline for accepting an offer *when* the offer is made.

**D**

We turn now to Husband's contention that Wife waived compliance with the September 25 signature deadline. Waiver is "the intentional relinquishment of a known right." *Taylor v. Mandel*, 402 Md. 109, 135 (2007). Waiver must be clearly communicated or implied from the circumstances. *See Myers v. Kayhoe*, 391 Md. 188, 205 (2006) (stating that waiver "must be clearly established and will not be inferred from equivocal acts or language"); *Canaras*, 272 Md. at 360-61 (stating that for waiver to be established through implication or mutual understanding, there must be evidence of a party's conduct demonstrating relinquishment of a right).

Husband leans heavily on his contention that the circuit court found that Wife knew Husband could not sign the documents until Monday and that Wife knew Husband's counsel was not at the office to take delivery of the settlement package. Even if those facts were true, it would not matter. An offeror's freedom to impose any conditions on her offer is not constrained by the offeree's ability, or lack thereof, to satisfy those conditions.

11

Wife's silence after receiving the documents from Husband on September 28 likewise did not constitute a waiver. When Husband signed the documents on September 28, Wife's offer had already expired, *see Am. Med. Spirits Co.*, 165 Md. at 133, and thus, there was no offer for Husband to accept. As a matter of law, when Husband delivered the signed documents to Wife (through counsel) on September 28, Husband made his own offer—some would call it a counteroffer—to Wife. That counteroffer put the power of acceptance in Wife's hands, as the new offeree. Wife had no duty to respond to Husband's counteroffer, and there is no evidence that she did respond, either in words or in deeds, until she timely filed her answer to Husband's amended complaint, in which she unambiguously disputed the validity of the Agreement.

That's not to say that silence can never amount to an acceptance. Acceptance through silence can occur if: (1) the parties agreed to that effect in advance, (2) there was a prior course of dealings that indicated such an understanding, or (3) the offeree accepts any benefits of the agreement. *See id.* But there is no evidence to support any of those exceptions here. Thus, Wife's mere silence, without more, was not an acceptance of Husband's offer. *See Cochran*, 398 Md. at 23-24.

**E**

Husband argues that the circuit court improperly excluded evidence of the parties' communications in the days and hours leading up to the hand delivery of the Agreement to Husband's counsel's office. As he did before the Appellate Court, Husband argues that, at a minimum, we should remand the matter for the circuit court to consider those exhibits. We have considered all the exhibits in the record, and we determine that, as a matter of

12

law, no contract was formed due to Husband's failure to adhere to Wife's deadline, and

that the evidence, including the excluded exhibits, does not support the circuit court's

waiver finding.

Those emails, had they been admitted, would have established the following:

- September 24 at 9:37 a.m.: Wife's counsel responded to Husband's proposals regarding personal property and financial responsibility for home repairs. Wife's counsel closed the email saying: "If this is acceptable, I will include your revisions in the Agreement, add the repair language above, and have [Wife] sign the Agreement for your client's counter-signing." *Thus, Husband was on notice to expect the signed documents from Wife that same day*.

- September 25 at 8:16 a.m.: Husband's counsel emailed to Wife's counsel a draft of the Guaranty with both counsel's and Husband's corporate counsel's comments and edits. Husband's counsel advised that "[Husband's corporate counsel] has not addressed some things still."

- September 25 at 10:17 a.m.: Referring to the Guaranty, Wife's counsel asked Husband's counsel: "When can we expect [Husband's corporate counsel]'s final comments? If not done this morning, I suppose this will have to be done next week sometime."

- September 25 at 10:40 a.m.: Husband's counsel responded: "We can execute the other documents today though. I have no problem with that. The Guaranty is agreed." *Thus, it was Husband's counsel, not Wife's counsel, who planted the idea that Husband would sign the Agreement and Note, but not the Guaranty, that same day. Husband's counsel never retracted that suggestion*.

- September 25 at 10:52 a.m.: Wife's counsel proposed revised language regarding the repairs to the marital home before it could be sold and told Husband's counsel that Husband's proposed changes to the Guaranty were accepted "except for the striking of the attorneys['] fees provision. My partner has included the same 10% attorneys['] fees provision as is in the Promissory Note." The email closed with: "If these changes are accepted, we can finish up."

- September 25 at 11:04 a.m.: Husband's counsel said, "I sent this to [Husband]." And referring to the proposed changes to the home repair provisions, Husband's counsel said, "I am fine with it as long as it is clear it is an exception to the

13

general language that [Husband] is solely responsible for upkeep of the house and bills."

- September 25 at 1:59 p.m.: Wife's counsel attached a revised Guaranty reflecting the change to the attorneys' fees provision mentioned in the prior email, and informed Husband's counsel that: "the signed and notarized Agreement, the Note and Guaranty will be delivered to your office in the next half hour. The [cover] letter is attached to this e-mail as well." *Thus, Husband's counsel was informed about the signature deadline in the early afternoon of September 25. And Husband testified that he saw that email and was aware that the signed Agreement and Note would be delivered to his counsel's office. Husband testified that he received the cover letter attached to that email.*

- September 25 at 2:31 p.m.: Husband's counsel responded: "I don't think anyone is there." *This was when Wife's counsel first learned that Husband's counsel was not in his office.*

- September 25 at 2:39 p.m.: Husband's counsel told Wife's counsel that he asked Husband's corporate counsel to expedite his review of the Guaranty and stated: "If it needs to be edited at all I will let you know." Husband's counsel added: "Fortunately [Husband] was ok with the principle regarding the house repairs as you set forth in your earlier email. I do need to review myself and if I have any tweak[s] I will let you know." *Thus, Husband was engaged in the settlement process on September 25, notwithstanding his illness.*

- September 25 at 3:27 p.m.: Husband's counsel wrote to Wife's counsel: "I know you are out, and am sorry to bother. But could you have someone send me via email the version of the Separation Agreement you had her sing [sic] and sent to my office please. I am not there at all today." *Thus, Husband's counsel appreciated the importance of getting the documents to Husband for his signature that day, as opposed to waiting for the following Monday.*

- September 25 at 3:57 p.m.: Responding to Wife's counsel's 1:59 p.m. email, Husband's counsel wrote: "This should be fine. [Husband's corporate counsel] had no more additions." *Again, no mention of any concern with the signature deadline.*

- September 25 at 3:51 p.m.: Someone from Wife's counsel's office emailed the settlement agreement package to Husband's counsel as requested in the latter's email at 3:27 p.m.

These emails would have provided no support for the circuit court's finding that Husband timely accepted Wife's offer or that Wife waived the signature deadline. Thus, we agree with the Appellate Court that a remand for that purpose is unnecessary.[4]

JUDGMENT OF THE APPELLATE COURT OF MARYLAND

---

[4] We respectfully disagree with the analysis of our dissenting colleagues. This case is not about what the Agreement says, it's about whether the Agreement constituted a binding contract under basic principles of offer and acceptance. The dissent's reliance on the terms of the Agreement, including the provisions confirming the voluntariness of the parties' signatures, the effective date of September 25, 2020, the integration clause, and others, are misplaced. For the same reason, so too is the dissent's reliance on the parol evidence rule. Had Husband timely accepted Wife's offer, all the terms of the Agreement would have been binding, and parol evidence would not have been permitted to vary them.

The dissent contends that we should attribute no significance to the cover letter because it was excluded as hearsay. But the dissent overlooks that both parties, in their testimony, testified about and confirmed the cover letter's contents verbatim, and without objection. So even if the substance of the cover letter constituted hearsay, any objection on that basis was waived, as its contents were in evidence and undisputed. Thus, the existence of the September 25th deadline for the execution of the Agreement did not hinge on anyone's credibility.

The dissent's focus on the hearsay issue underscores a broader misunderstanding of the legal import of the cover letter and the evidentiary purpose it served. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Md. Rule 5-801(c). The contents of the cover letter were not offered for the truth of the matter asserted, but rather for the legal effect of Wife's expression of the deadline. That is, the delivery of the letter with such contents constituted an act with independent legal significance. *See State v. Young*, 462 Md. 159, 175 (2018).

Such acts include the making and acceptance of an offer. *Garner v. State*, 414 Md. 372, 382 (2010). For example, if a person were to say to a car owner "I offer you $200 for your car and the offer expires in 15 minutes," that statement would be admissible for the legal effect of uttering those words, which are twofold: (1) the person offered to buy the car for $200 and put the power of acceptance in the owner's hands; and (2) the owner's power of acceptance expires in 15 minutes. If the owner wasn't listening and did not learn about the offer until after it expired (perhaps when the person later said to the owner that the person was surprised that the owner didn't accept it), as a matter of law, this would not matter. Nor would it matter that the owner never agreed to the unilateral deadline. As the offeror, the person had the unfettered unilateral right to dictate the terms of the offer and any acceptance deadline. The same principles apply here.

15

**AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

Circuit Court for Anne Arundel County
Case No.: C-02-FM-19-001962
Argued: April 7, 2025

IN THE SUPREME COURT

OF MARYLAND

No. 33

September Term, 2024

_____

TODD A. PATTISON

v.

DEBORAH PATTISON

_____

Fader, C.J.,
Watts,
Booth,
Biran,
Gould,
Eaves,
Killough,

JJ.

_____

Dissenting Opinion by Killough, J., which
Eaves, J., joins.

_____

Filed: July 23, 2025

I respectfully dissent from the Majority's opinion reversing the trial court's enforcement of the marital settlement agreement in this case. In my view, the Majority's framing of the case through an "offer and acceptance" construct is misplaced. The parties had already negotiated and agreed to all material terms of a settlement, reduced that agreement to writing, and Respondent (referred to herein as "Wife" or "Ms. Pattison") signed, initialed, and notarized the agreement. Her signature reflected her unequivocal assent to be bound. When Petitioner (referred to herein as "Husband" or "Mr. Pattison") signed the agreement on September 28, 2020, there was no open offer left to accept or reject – only a binding agreement to be enforced.

The Majority cites no case – and I am aware of none – in which a court has set aside a fully executed, integrated agreement based solely on a purported condition precedent found in an extrinsic document. Yet that is precisely the result the Majority reaches. According to the Majority, "any reasonable person" would have understood Wife's directive that Husband sign the agreement on September 25, 2020, as a binding condition precedent to contract formation, and "[c]onversely, no reasonable person would perceive any flexibility in that deadline." Majority Op. at 9-10. But that is not what the trial court found. There is no evidence that this so-called "directive" was timely conveyed to Husband or that he acknowledged it. This "directive" was not contained in the agreement, but rather appeared only in a cover letter dated September 25, 2020, authored by Wife's counsel and enclosing the agreement (the "Cover Letter"). Husband did not testify that he read the Cover Letter before the deadline passed or that he understood it to impose any binding condition. Neither party's counsel testified as to what, if any, communications occurred

regarding a deadline. Most notably, the Cover Letter was excluded from evidence as hearsay.

In effect, the Majority invalidates a fully executed, integrated settlement agreement based entirely on an excluded hearsay document – a remarkably thin evidentiary reed on which to overturn not only a signed contract but also the trial court's supported factual findings. In my view, the trial court got it right. Given the deference owed to a trial court's findings, and in light of Maryland's strong policy favoring settlements and the efficient administration of justice, *see Chertkof v. Harry C. Weiskittel Co.*, 251 Md. 544, 550 (1968), *cert. denied*, 394 U.S. 974 (1969), I would affirm the trial court's ruling.

I.

*Facts*

I agree with the factual background set forth in the Majority opinion and will only summarize additional facts in this opinion as needed.

After a hearing on the Petitioner's motion to enforce the settlement, the trial judge ruled on March 17, 2021, that the parties had reached a valid and enforceable settlement agreement following extensive negotiations. After spending approximately seven hours in mediation with a former judge of the Supreme Court of Maryland and engaging in nearly three weeks of back-and-forth negotiation, the parties agreed on all material terms of a settlement and reduced that agreement to writing. The agreement, finalized by Wife's attorney, was memorialized in a twelve-page "Voluntary Separation and Property Settlement Agreement" (the "Settlement Agreement").

The uncontroverted record shows that Wife signed and initialed each page of the Settlement Agreement and dated it September 25, 2020. Wife had the Settlement Agreement notarized, certifying that she personally appeared before the notary to "execute[] this Agreement and made oath in due form of law that the matters and facts set forth in the foregoing Agreement true and correct as stated in the Agreement, and [that she] acknowledged that the Agreement is in fact her free act and deed and that she has full understanding of its terms." Husband signed and notarized the Settlement Agreement on September 28, 2020.

The Settlement Agreement's terms are undisputed: it became effective on September 25, 2020. The Settlement Agreement is fully integrated and prohibits any amendments without mutual written consent. Both parties declared that the terms of the agreement were "fair, just and reasonable" and that they signed the agreement "freely and voluntarily." Based on its analysis of the agreement, the trial court held that the parties' "intent can be determined from the unambiguous language in the [Settlement Agreement]." Consequently, the trial court found that the Settlement Agreement was valid and enforceable as of September 25, 2020, and that there was mutual assent by the parties to be bound by its terms.

Wife argued that there was no mutual assent to contract because Husband did not comply with her demand in the Cover Letter that he sign the Settlement Agreement on September 25, 2020. In that letter, Wife's counsel wrote, "[t]his Agreement is delivered to you in settlement of the parties' outstanding disputes on condition that the Agreement and Note be executed by Mr. Pattison today." But the Cover Letter was excluded from

3

evidence as inadmissible hearsay. During the hearing, however, Wife's counsel read excerpts from the Cover Letter to Husband and he was questioned as to whether he was familiar with the letter. The authors and recipients of the hearsay documents did not testify.

Husband testified that he first saw the original copy of the Settlement Agreement with Wife's signature "[o]n the morning of Monday, September 28th, 2020." Because he was quarantined after testing positive for Covid, he made arrangements with his attorney to have the Settlement Agreement dropped off on the sidewalk outside his home. He then signed the Settlement Agreement, had it notarized, and returned it to his counsel. Husband testified that he saw an emailed version of the Settlement Agreement at some point after 5 p.m. on Friday, September 25. He was not sure if that email version he saw was signed by Ms. Pattison. No exhibit was admitted into evidence that purported to be the emailed version of the Settlement Agreement or Cover Letter. The Cover Letter itself does not indicate that it was emailed to Mr. Pattison or his counsel but indicates that Ms. Pattison was copied on the email.

Wife testified that she signed the Settlement Agreement "around noon" on September 25, 2020, and instructed her counsel to deliver it "with condition that the Agreement and Note be executed by Mr. Pattison that Friday." Yet she neither directly communicated that condition to Husband nor did Husband testify specifically that he saw the Cover Letter on that date. There is no evidence in the record of whether the attorneys communicated with each other about the deadline contained in the Cover Letter. What we do know is that the Settlement Agreement contained no such deadline; Wife never

4

conveyed one directly; and neither attorney was in the office late Friday afternoon, September 25, to receive the executed documents.

The trial court ruled that the language of the Settlement Agreement "unambiguously[] indicates a mutual assent by the parties to enter into a[n] . . . agreement on September 25th, 2020 to settle all matters[.]" With respect to the alleged condition precedent, all that the trial judge had before her were the parties' competing testimonies – Husband's testimony that he never understood September 25, 2020, to be a firm cutoff, and Wife's recollections of her instructions to her counsel regarding the alleged condition precedent. The trial court relied on neither the Cover Letter nor the emails between counsel that it excluded from evidence. On that record, the trial court found the alleged deadline uncommunicated and unenforceable, holding that "[a]fter consideration of the evidence and considering the credibility of the witnesses, I do not find that Mrs. Pattison's offer included a definite time expiration of September 25th, 2020." The trial court further reasoned that "[e]ven if for argument sake communication that Mrs. Pattison's offer included a time limit, contract formation still would have occurred through the action of the parties."

## II.

### Standard of Review

When an action is tried without a jury, an appellate court reviews both the law and the evidence. *See* Md. Rule 8-131(c). The trial court's factual findings – including findings based on witness credibility, inferences from conduct, and the surrounding context of an alleged agreement – are reviewed for clear error. *See Torboli v. Torboli*, 127 Md. App.

5

666, 672 (1999). The appellate court views the evidence in the light most favorable to the prevailing party, *City of Bowie v. MIE Props., Inc.*, 398 Md. 657, 676 (2007) and resolves all evidentiary conflicts in the prevailing party's favor. *First Union Nat'l Bank v. Steele Software Sys. Corp.*, 154 Md. App. 97, 107 n.1 (2003), *cert. denied*, 380 Md. 619 (2004); *see also Brault Graham, LLC v. Law Offices of Peter G. Angelos, P.C.*, 211 Md. App. 638, 659 (2013) ("An appellate court reviews a trial court's factual findings for clear error, and reviews the trial court's legal conclusions *de novo*."). If there is any competent and material evidence to support the court's findings, those findings cannot be held clearly erroneous. *L.W. Wolfe Enters., Inc. v. Md. Nat'l Golf, L.P.*, 165 Md. App. 339, 343 (2005).

## III.

### *Discussion*

I disagree with the Majority that Wife imposed a valid condition precedent to the formation of the Settlement Agreement through the Cover Letter. The parties agreed to settle this case *effective* September 25, 2020, as evidenced by their notarized signatures on the Settlement Agreement. The terms and conditions of their settlement are reflected in that agreement. Nowhere in the Settlement Agreement is there a timing provision on signing the agreement or any reference to the Cover Letter. Moreover, the Cover Letter was deemed hearsay by the trial court and was not admitted into evidence. At most, whether Wife imposed a valid condition precedent presented a disputed factual question – namely, whether she clearly and effectively communicated a firm deadline for Husband to sign the agreement on September 25, 2020. The trial court answered that question in the negative and its finding is well supported by the record and is not clearly erroneous.

A.

*The Trial Court's Finding That There Was Mutual Assent*
*For the Settlement Agreement Is Entitled to Deference*

The trial court correctly found that the parties reached mutual assent to settle the case effective September 25, 2020. After nearly three weeks of back-and-forth negotiations and multiple drafts, Wife's counsel prepared the final agreement, which Wife signed in two original copies, initialed on each page, and had notarized. Husband likewise testified that he agreed to all the terms and conditions. The trial court found that the Settlement Agreement was fully integrated and effective under its express terms on September 25, 2020. There was no allegation of duress, fraud, or mistake.[1] Wife signed of her own volition, fully represented by counsel, and under no compulsion to execute the document. Husband did the same on Monday, September 28, 2020.

The trial court concluded that the Settlement Agreement:

> [U]nambiguously, indicates a mutual assent by the parties to enter into a voluntary separation and property agreement on September 25th, 2020 to settle all matters of every kind and character arising from their marital relationship.

> As a result, this Court finds that the threshold issue of whether mutual assent, the essential prerequisite to the creation or formation of a contract, has occurred.

I find that the trial court's factual findings and legal conclusion are well-supported by the evidentiary record in this case.

---

[1] Wife alleged duress in her motion to set aside the Settlement Agreement, but did not introduce any evidence of duress at the hearing, and ultimately withdrew the motion.

7

The trial court further determined that because the parties' intent to form a contract could be gleaned from the unambiguous language contained in the Settlement Agreement, consideration of the Cover Letter was not appropriate because it was barred by the parol evidence rule. I agree with this ruling as well. *See Calomiris v. Wood*, 353 Md. 425, 361-62 (1999) ("Under the parol evidence rule, a written agreement 'discharges prior agreements,' thereby rendering legally inoperative communications and negotiations leading up to the written contract.") (quoting Restatement (Second) of Contracts § 213 (1979)).

There is ample competent evidence supporting the trial court's finding of a binding contract: the fully executed, integrated, and notarized Settlement Agreement itself, Wife's delivery of the signed originals, and Husband's express acceptance of its terms. The trial court credited this direct evidence in finding mutual assent – a finding we review only for clear error. *See* Md. Rule 8-131(c). The Majority ignores the trial court's finding of mutual assent and its interpretation of the express terms of the Settlement Agreement. Instead, the Majority relies on an excluded post hoc hearsay document to conclude that Wife's purported "offer" had not been "accepted" and expired at midnight on September 25. As discussed below, I disagree with this approach because it rewrites the factual record, disregards the trial court's firsthand credibility determinations, and relies on excluded hearsay to reach its conclusion.

## B.

*The Trial Court's Finding That Wife Did Not Impose
A Valid Condition Precedent Was Not Clearly Erroneous*

Having determined that the fully executed, integrated Settlement Agreement was binding and enforceable as of September 25, 2020, the trial court also evaluated whether Wife's testimony – that she conditioned her offer on Husband's signing by that date – was supported by the evidence. The trial court found that it was not, explaining: "After consideration of the evidence and considering the credibility of the witnesses, I do not find that Mrs. Pattison's offer included a definite time expiration of September 25th, 2020." Because that factual finding is entitled to deference under Maryland Rule 8-131(c) unless "clearly erroneous," *see Mercy Medical Center, Inc. v. United Healthcare of the Mid-Atl., Inc.*, 149 Md. App. 336, 355 (2003), and because the record amply supports that finding, the trial court ruling should be affirmed.

The reasons offered by the Majority to overturn the trial court's ruling are unpersuasive.

*First*, the Cover Letter could not impose a valid condition precedent to formation of the Settlement Agreement. The letter was drafted *after* Wife had already executed the Settlement Agreement, contains no reference to any signature deadline, and cannot retroactively alter a contract already formed as of September 25. A condition precedent by definition must exist at the moment of contract formation; it cannot be grafted on by a unilateral post-execution communication.

9

*Second*, there is no evidence that any deadline was directly conveyed to Mr. Pattison prior to midnight on September 25, much less that he acknowledged or ratified such a deadline. No one – neither Mr. Pattison, the attorneys, nor Ms. Pattison – testified that a September 25, 2020 deadline was expressly conveyed to Mr. Pattison. Mr. Pattison acknowledged receiving and being familiar with the Cover Letter; but that does not establish that he read or understood the letter as of the evening of September 25, or that he regarded it as imposing a binding deadline.

Mr. Pattison was asked directly whether he understood there to be "a condition that you sign the agreement and the note on September 25." He responded: "That's not correct." He elaborated:

> Because the next sentence [of the Cover Letter] says, 'I will assume that we will have a final guaranty signed by Mr. Pattison by close of business on Monday.' My interpretation was [Ms. Pattison's attorney] needed all the executed documents by Monday, because without the personal guaranty and the promissory note, the settlement agreement is unenforceable.

Mr. Pattison further testified that he understood there to be no deadline or expiration date for his signature on the Settlement Agreement. He believed, based on his attorney's communications with Ms. Pattison's attorney, that the parties had reached agreement on all terms as of Friday, September 25, 2020, and that he was obligated to sign the personal guaranty and promissory note in the days that followed. When asked if it was his position that he could sign the settlement documents on Monday, September 28, when he provided the final guaranty, Mr. Pattison answered: "My position has always been that."

I disagree with the Majority opinion that Mr. Pattison's understanding was irrelevant. *See* Majority Op. at 8-9. Mr. Pattison's understanding was informed, at least

10

in part, on his understanding that he and Wife had agreed to all outstanding issues effective September 25 as evidenced by Wife's execution of the Settlement Agreement. With respect to the timing of his signature, Mr. Pattison understood that he could execute all of the settlement documents on Monday, September 28. The trial court credited that testimony, and it provided a reasonable basis for the court's conclusion that there was no clear condition precedent tied to the September 25 date.

The Majority's citation to *Ray v. Eurice & Bros, Inc.*, 201 Md. 115 (1952) is misplaced. *See* Majority Op. at 8-9. *Ray* and its progeny stand for the principle that a party's subjective intent is irrelevant when interpreting the terms of a contract that both parties signed. Here, it is undisputed that the Cover Letter was not incorporated into the Settlement Agreement, was not signed or agreed to by Husband (or perhaps timely seen), and, importantly, never admitted into evidence. Since the Cover Letter was not part of the Settlement Agreement, *Ray* does not resolve whether that letter's terms – standing alone – create a legally enforceable condition precedent. As the trial court correctly recognized, they did not.

*Third*, the Cover Letter was excluded from evidence as inadmissible hearsay and its contents cannot be considered on appellate review as a basis for overturning the trial court's factual findings.[2] Wife did not challenge that exclusion on appeal, so we should not

---

[2] The Majority's analytical variability on the trial court's findings below is underscored by its effort to recast the Cover Letter as non-hearsay. *See* Majority Op. at 15 n.4. The Majority argues that the Cover Letter was not offered for its truth, but rather "for the legal effect of Wife's expression of the deadline. That is, the delivery of the letter with such contents constituted an act with independent legal significance." But that effect

11

reconsider its exclusion now.  *See* Md. Rule 8-131(a); *Robinson v. State*, 404 Md. 208, 217 (2008).  The fact that Wife's counsel read the contents of the Cover Letter to Husband and Wife during questioning does not transform inadmissible material into admissible evidence.  *See cf. Clermont v. State*, 348 Md. 419, 429 (1998) (defense counsel's statement did not constitute as evidence and was properly struck from the record).  It is manifestly unfair to strike down a contract based on a document the trial court neither admitted into evidence nor relied upon in its ruling.  The Majority cites no case to the contrary.

*Fourth*, the Majority overlooks the fact that the Cover Letter was both legally and practically incapable of imposing a same-day deadline.  Because the Settlement Agreement did not include a counterpart clause, Mr. Pattison was not authorized to simply signed an email copy of the agreement as the Majority suggests.  Such a clause typically allows contracts to be executed in "counterparts, and each counterpart will have the same force and effect as an original and will constitute an effective, binding agreement on the part of each of the undersigneds."  *See* Alan S. Gutterman, *Business Transactions Solutions* §

---

hinges on the recipient's timely awareness of "Wife's expression of the deadline" – a factual dispute the trial court resolved in Husband's favor.  Indeed, the very case the Majority cites – *Garner v. State*, 414 Md. 372 (2010) – undermines the notion that it does not matter if the offeree "did not learn about the offer until after it expired."  Majority Op. at 15 n.4.  In order to constitute non-hearsay, a "verbal act" must not only have independent legal significance, but also is clearly communicated to the recipient to give it evidentiary significance.  *Garner*, 414 Md. at 382 ("can I get a 40" was a verbal act with legal significance and actually received by the listener).  More fundamentally, the time to invoke this argument has long passed.  Unlike in *Garner*, where the hearsay issue was appealed, Wife did not raise this argument before the trial court.  Neither party challenged the exclusion of the Cover Letter on appeal, and both structured their proofs at trial accordingly.  Waiver and failure to preserve preclude this Court from reversing the trial court's evidentiary ruling.  The Majority cites no authority permitting it to revive and rely on excluded hearsay at this stage – and I know of none.

12

113:130 (Thomson Reuters 2010). These clauses are standard when parties are expected to sign at different times or locations. Indeed, the Cover Letter acknowledged that Ms. Pattison had already signed both originals and instructed Mr. Pattison to "counter-execute" them – not sign an email copy. Thus, this instruction contemplated sequential, not simultaneous, execution of the Settlement Agreement.[3]

Same-day counter-execution of the Settlement Agreement was also impractical. It is undisputed that Wife's counsel sent the executed originals late in the day on Friday, September 25, to a law office he knew would be closed for the weekend. *See* Majority Op. at 13-14. Mr. Pattison, who was incapacitated on September 25 as a result of having Covid, did not receive the originals until Monday, September 28. How, then, can the Cover Letter impose a "definite deadline" requiring execution on September 25, when the documents were physically inaccessible to Mr. Pattison until three days later? The Majority offers no answer – only speculation that his counsel could have requested an extension. *See* Majority Op. at 15.

*Fifth,* the Majority disregards the trial judge's credibility determinations. After hearing testimony from both parties, the judge found that Ms. Pattison did not impose "a definite time expiration of September 25th, 2020." The Majority declares credibility

---

[3] This is further evidence that the Cover Letter was merely a timing provision that Wife sought to impose after the fact. Under the Majority's reasoning, any temporal gap between the parties' respective signatures would reduce every mutually assented to agreement to a mere "offer" until the other party signed – an outcome squarely at odds with established principles of contract law.

"irrelevant" and instead relies on counsel's scheduling emails – which were also excluded as hearsay – to conclude that Husband "was engaged in the settlement process on September 25, notwithstanding his illness." Majority Op. at 14. Not only is this conclusion inconsistent with Mr. Pattison's testimony,[4] but it also ignores the trial court's role in resolving factual disputes.

*Finally*, the Majority gives short shrift to the standard of review. The trial court, sitting as fact-finder, heard the evidence, evaluated credibility, and concluded that Wife failed to prove the existence of a valid condition precedent. That conclusion was rooted in the plain language of the Settlement Agreement, which established the effective date of the Settlement Agreement as of September 25 and which contained no deadline for Husband's signature, and no express condition precedent. Viewing the evidence in the light most favorable to Husband as the prevailing party, and resolving all evidentiary conflicts in his favor, we should affirm rather than second-guess the trial court's factual findings or fill evidentiary gaps with unwarranted inferences against him. *See Knowles v. Binford*, 268 Md. 2, 11 (1972) ("[T]he trial court is not only the judge of a witness' credibility, but is also the judge of the weight to attach to the evidence[.]").

IV.

*Conclusion*

It is important to consider the context in which this dispute arose. On March 16, 2021, the trial court convened a two-day enforcement hearing on Husband's

---

[4] Mr. Pattison testified that he was ill with Covid on September 25, 2020, and slept most of the day.

14

motion to enforce the Settlement Agreement he and Wife had negotiated and agreed to through counsel. In evidence before the court was the fully executed Settlement Agreement – signed, initialed, and notarized by *both* parties. The terms of the agreement were clear and unambiguous.

Ms. Pattison seeks to transform an after-the-fact cover letter – excluded from evidence as hearsay – into a condition precedent to contract formation. She contends that the agreement sent to Mr. Pattison on September 25, 2020, constituted a mere offer, subject to automatic withdrawal at midnight unless signed that same day. But this ignores that the Settlement Agreement was effective as of September 25 and there is no indication in the record that any such "condition" was clearly communicated to Mr. Pattison. Notably, neither Ms. Pattison nor her attorney advised Mr. Pattison that the "offer" was withdrawn after the supposed deadline passed. To the contrary, when Ms. Pattison received the executed agreement from Mr. Pattison on Monday, September 28, she raised *no* objections. It was not until October 14 – seventeen days later, and two weeks after Mr. Pattison had begun performing under the agreement – that Ms. Pattison first asserted that no contract had been formed due to an unmet condition precedent.[5]

---

[5] I agree with the trial court's finding that even assuming the Cover Letter imposed a valid condition precedent, the record demonstrates that Wife waived that condition by her actions. Where an offeror "who does not in fact insist upon" a time limit and continues negotiations "may indicate a continued willingness to stand by the terms of its offer," thereby extending the acceptance period and effectively creating a new offer. *Williston on Contracts* § 5:5.

15

In reversing the trial court's enforcement of the Settlement Agreement, the Majority has effectively announced a new rule of contract construction: a fully executed, integrated settlement agreement – signed, notarized, and negotiated by counsel – may be set aside if one party can point to any contemporaneous, extrinsic communication arguably conditioning its formation. That departs from Maryland's objective theory of contracts, as articulated in *Ray*, which holds that "[t]he only intent of the parties to a contract which is essential, is an intent to say the words and do the acts which constitute their manifestation of assent," judged by what a reasonable person in the parties' position would have understood. *Ray*, 201 Md. at 127. Even if one party is mistaken, and even if that mistake creates a hardship, a clearly expressed, integrated written contract may not be varied by parol evidence – absent fraud, duress, or mutual mistake. *Id.* at 125.

Here, there are no allegations of fraud, duress, or mutual mistake – nor even a claim that enforcement of the agreement would create any hardship. Ms. Pattison simply changed her mind – nineteen days after signing the Settlement Agreement – presumably because she decided she wanted more money than what the agreement provided. She even later described the Settlement Agreement's terms as "unconscionable."

By supplanting the objective inquiry (what does the contract say?) with a subjective one (what do the extrinsic, unincorporated communications say?), the Majority undermines the certainty that integrated contracts are meant to provide.[6] The Majority's opinion invites

---

[6] The Majority insists that this case "is not about what the Agreement says, it's about . . . offer and acceptance." Majority Op. at 15 n.4. Respectfully, that framing collapses under the weight of the record. The trial court expressly found that the parties had already

16

litigation over cover letters, emails, text messages, social media posts and other collateral documents or media a party may never have seen or agreed to – and renders enforcement of even signed, notarized, and fully integrated agreements uncertain.

The Majority opinion is even more problematic in the family law context, where emotions run high. By imposing strict black letter law as to offer and acceptance – incorrectly, as it turns out here – the Majority opinion could significantly hamper the ability of judges to resolve these cases. Under the Majority's reasoning, a party who develops buyer's remorse, or who for no reason at all wishes to return to the bargaining table without providing a basis for doing so, need only append by email, or some separate writing, not agreed to or considered by the other party, a condition precedent that undercuts a carefully crafted agreement that otherwise thoroughly and exclusively states the parties' mutual assent. With the Majority's view, where the record shows no disagreement by Ms. Pattison as to *any* term in the actual Settlement Agreement, the trial court's ability to make credibility determinations, and most importantly, to resolve the case, has been effectively undercut. Ms. Pattison and other family law parties should not benefit from an incorrect

---

formed a binding contract through mutual assent on September 25th – offer accepted. A more apt analogy than the one posed by the Majority is where X and Y agree to the $200 car sale. Y signs a promissory note for $200, and X signs over title. Two hours later, X sends Y a text saying the sale is conditioned on my getting the $200 within the next 15 minutes. Even where Y actually sees the text message (something that did not happen here according to the trial court), this post hoc condition cannot retroactively alter the binding agreement already executed. It is exactly the Majority's elevation of the unilateral, post-execution Cover Letter over the express and integrated terms of the Settlement Agreement that is problematic, particularly here where the language of the Settlement Agreement precludes precisely the kind of maneuver Wife has now effected with the Majority's endorsement.

17

construct of contract law that prolongs the case by an unexpected condition precedent that was wholly unreasonable under the circumstances. Gaming the resolution of family law cases in this manner benefits no one.

The trial court made no error in enforcing the Settlement Agreement based on the evidence before it, and the Majority identifies none – other than its argument that the inadmissible post-hoc Cover Letter was a valid condition precedent and is dispositive. The Majority offers no workable guidance to trial courts facing belated or collateral attacks on settlement agreements. When does a "condition" in a post-execution cover letter become a valid condition precedent? Does mutual assent disappear simply because one party signs the contract a few days after the other – particularly when sequential execution was anticipated? Does an integration clause preclude the enforcement of extrinsic terms that contradict the agreement itself? And what role should trial courts play in enforcing written agreements when alleged conditions appear nowhere in the agreement and were never agreed to by the other party? I do not know the answers to these questions after reading the Majority opinion. Instead, the Majority provides a roadmap for undoing signed settlement agreements, undermining Maryland's strong public policy in favor of finality and resolution.

For the foregoing reasons, I respectfully dissent from the Majority opinion. Justice Eaves has authorized me to state that she joins this dissent.